LEONARD BERLINGO *v.* STERLING OCEAN HOUSE, INC.
(3411)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued May 17—decision released September 17, 1985—upon reconsideration, reversed January 28, 1986[1]

[1] At the time this opinion was originally released, this court found error. After reargument and further consideration, we find no error.

*William H. Narwold,* for the appellant (defendant).

*D. Seeley Hubbard,* for the appellee (plaintiff).

SPALLONE, J. The defendant is appealing from the judgment for the plaintiff rendered in an action for forcible entry and detainer brought pursuant to General Statutes § 47a-43.[2]

The facts found may be summarized as follows: In January, 1980, the defendant entered into a long term lease with the Stamford Golf Authority (SGA) for certain premises located at the Sterling Farms Golf Course

---

[2] "[General Statutes] Sec. 47a-43. COMPLAINT AND PROCEDURE: FORCIBLE ENTRY AND DETAINER; ENTRY AND DETAINER. (a) When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the superior court.

"(b) Such judge shall forthwith issue a summons to the party complained of, directed to some proper officer, to notify him to appear at a specified time and place, within eight days from the exhibition of such complaint, in the superior court for the judicial district wherein the injury complained of was done, to answer to the matters contained in the complaint.

"(c) Such summons shall be served upon the party complained of six days inclusive before the day appointed for trial.

"(d) If, after service of such summons, the party complained of does not appear and defend, the judge shall proceed in the same manner as if he were present."

and Recreational Complex. The leased premises consisted of a portion of the main clubhouse, where the defendant operated a restaurant, and a separate snack bar known as Halfway House. On August 13, 1981, the plaintiff entered into a management agreement with the defendant under the terms of which the plaintiff would manage the snack bar located in the Halfway House. In accordance with the management agreement, the plaintiff operated the snack bar for the balance of the golfing season which ended on November 15, 1981, the entire golfing season of 1982, that is from March 15, 1982, to November 15, 1982, and for part of the season of 1983.

On April 24, 1983, a fire occurred in the main clubhouse resulting in the closing of the restaurant operated by the defendant. On May 25, 1983, SGA held a special meeting and voted to terminate its lease with the defendant pursuant to a provision of the lease which provided for such action. After SGA terminated its lease with the defendant, SGA entered into a month-to-month lease with the plaintiff for the Halfway House premises. Thus, beginning in July and continuing through November 15, 1983, the plaintiff operated the snack bar as a lessee of SGA, rather than as an employee of the defendant under the management agreement.

Shortly after the 1983 golfing season ended, the defendant and SGA entered into a new lease for the formerly leased premises including the Halfway House. By letter dated February 13, 1984, the defendant purported to terminate its management agreement with the plaintiff. At that time, however, the plaintiff was still leasing the premises on a month-to-month basis from SGA. By letter dated March 22, 1984, SGA notified the plaintiff that it was terminating its month-to-month lease with him and that he would "be afforded thirty (30) days from the receipt of [the] letter to relin-

quish possession of the [Halfway House] and remove any property stored thereon." On April 20, 1984, the plaintiff, without interference, entered the premises and removed his personal property. Three days after the plaintiff removed his personalty, SGA turned over possession of the Halfway House to the defendant.

On April 27, 1984, the plaintiff commenced this action of forcible entry and detainer against the defendant. After a trial to the court, judgment was rendered for the plaintiff and, upon the court's denial of the defendant's motion to reconsider and for a new trial, the court issued a writ of restitution restoring the plaintiff to possession of the subject premises.The defendant has appealed the action of the trial court, claiming, inter alia, that the court erred in not dismissing the action for lack of subject matter jurisdiction and in concluding that the evidence supported the plaintiff's claim of forcible entry and detainer.

The defendant's jurisdictional assertion that forcible entry and detainer does not lie where the property involved is a commercial establishment is without merit. We believe the defendant's narrow view of the word "tenement" as used in General Statutes § 47a-43 is misplaced. "In its most extensive signification, the word comprehends everything which may be holden, provided it be of a permanent nature. In a more restricted sense, it is a house or building." Ballentine's Law Dictionary (3d Ed.). The historical purpose of entry and detainer statutes belies any such limitation on its availability with regard to commercial property.

"Under the ancient common law an owner dispossessed of his land had the right . . . to retake it [by force and force of arms if necessary], but after a time the consequent evils seemed too serious to be endured. In the year 1381, a statute (5 Rich. II, Ch. 7) was passed which provided that 'None from henceforth may make

any entry into any lands and tenements, but in case where entry is given by law; and in such case not with strong hand, nor with multitude of people, but only in a peaceable and easy manner.' Similar provisions were expressly adopted in the Colony of Connecticut in 1689 and in 1722, and in 1821 were in substance enacted by the legislature of the State in the statute now in force." *Orentlicherman* v. *Matarese*, 99 Conn. 122, 125–26, 121 A. 275 (1923). General Statutes § 47a-43, our present statute, embodies these principles, making it unlawful for a dispossessed party to retake possession by force. An actual peaceable possession, however obtained, could not be put to an end without some process of law. *Larkin* v. *Avery*, 23 Conn. 304, 310 (1854). A dispossessed party may not take the law into his own hands and by force eject even a trespasser who is in actual peaceable possession. *McAllin* v. *McAllin*, 77 Conn. 398, 402, 59 A. 413 (1904). " 'There are several reasons why the law cannot suffer a forcible entry upon a peaceable possession . . . : First; Whoever assumes to make such an entry makes himself judge in his own cause, and enforces his own judgment. Second; He does this by the employment of force against a peaceable party. Third; As the other party must have an equal right to judge his own cause, and to employ force in giving effect to his judgment, a breach of the public peace would be invited, and any wrong, if redressed at all, would be redressed at the cost of a public disturbance, and perhaps of serious bodily injury to the parties.' 2 Cooley on Torts (3d Ed.) 663." *Orentlicherman* v. *Matarese*, supra, 126–27. Certainly, these principles are just as applicable to commercial as they are to noncommercial properties. It would be illogical to assume that a society would eschew violence where private dwellings are involved but would tolerate violence with respect to the re-entry into commercial property. We hold that a broad, extensive definition

of "tenement," particularly as used in our statute, that is "any land, tenement or dwelling unit," is a rational interpretation of the statute and gives efficacy to the public purpose expressed by the statute, which is the outlawing of the use of force in the assertion of a person's right in real property, regardless of the use to which the property is put. The court did not err in concluding that it had jurisdiction to hear the matter.

We agree with the trial court's conclusion that the plaintiff's claim of forcible entry and detainer was proven. The fundamental and controlling factor is whether the plaintiff was in actual possession at the time of the entry by the defendant. *Communiter Break Co.* v. *Scinto,* 196 Conn. 390, 393, 493 A.2d 182 (1985).

The plaintiff's possession is predicated on his relationship with SGA. Their relationship was that of landlord-tenant and arose out of an admitted month-to-month rental. The crux of the matter lies in the fact that a lease is a contract. In the case of a rental on a month-to-month basis, the tenancy is not regarded as a continuous one. The tenancy for each month is one separate from that of every other month. *Corrigan* v. *Antupit,* 131 Conn. 71, 76, 37 A.2d 697 (1944); *Chipman* v. *National Savings Bank,* 128 Conn. 493, 497, 23 A.2d 922 (1942); *Williams* v. *Apothecaries Hall Co.,* 80 Conn. 503, 506, 69 A. 12 (1908). For each month, there must be a new contract for leasing. *Welk* v. *Bidwell,* 136 Conn. 603, 607, 73 A.2d 295 (1950). The holding over by the tenant in and of itself is insufficient to raise a contract of lease by implication. A lease will not be presumed unless there is acquiescence on the part of the landlord. Id., 607; *Byxbee* v. *Blake,* 74 Conn. 607, 610, 51 A. 535 (1902). If a tenant remains in possession without the consent of the landlord, there is no contract for an extended term to be implied from the holding over. *City Coal Co.* v. *Marcus,* 95 Conn. 454, 465, 111 A. 857 (1920). In point of fact, General Statutes

§ 47a-3d expressly states: "Holding over by any lessee, after the expiration of the term of his lease, shall not be evidence of any agreement for a further lease. Parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only." In this case, the landlord did not acquiesce in the tenant's holding over and, in fact, it took affirmative action to terminate the tenancy by its letter of March 22, 1984, wherein it notified the plaintiff of such termination and allowed him thirty days to remove his personalty. SGA's action was an unequivocal act on its part to terminate the tenancy. Thereafter, the plaintiff was a tenant at sufferance and subject to eviction for having no right to be in possession. Obviously, SGA was not consenting to the plaintiff's continued possession. "A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his right thereto has terminated. Restatement, 1 Property § 22; 32 Am. Jur. 88." *Welk* v. *Bidwell,* supra, 608–609. That is the situation in this case. The plaintiff, prior to April 1, 1984, was rightfully entitled to possession. After that date, any claim he had to possession was extinguished by SGA's notice of termination. Any possession by the plaintiff after April 1, 1984, would be wrongful. Accordingly, after that date, he was a tenant at sufferance. Id., 609.

Although, as a tenant at sufferance the plaintiff was not entitled to possession, he nevertheless had standing to prevail in an action for forcible entry and detainer provided that he was in actual possession on the date of his ouster. *Carrier* v. *Carrier,* 85 Conn. 203, 207, 82 A. 187 (1912). The question we must resolve is whether the evidence presented in this case supports the finding of the trial court that actual possession was in the plaintiff. "The question of whether the plaintiff

was in actual possession at the time of the defendant's entry is one for the trier of fact. *Gray* v. *Finch,* 23 Conn. 495, 513–14 (1855). Generally, the inquiry is whether the individual has exercised the dominion and control that owners of like property usually exercise. 35 Am. Jur. 2d, Forcible Entry and Detainer, § 15; see *Hancock* v. *Finch,* 126 Conn. 121, 123, 9 A.2d 811 (1939). . . . [I]t is not necessary that there be a continuous personal presence on the land by the person maintaining the action. There, however, must be exercised at least some actual physical control, with the intent and apparent purpose of asserting dominion. 35 Am. Jur. 2d, Forcible Entry and Detainer, § 14." *Communiter Break Co.* v. *Scinto,* supra, 394.

Although the court did not expressly find that the plaintiff was in actual possession, we conclude that it did so by implication when it referred to the plaintiff as the "actual possessor."

The question we are confronted with is whether the trial court, on the basis of the evidence presented, could reasonably and logically conclude that the plaintiff was in actual possession of the premises at the time of the defendant's entry.

There was evidence presented by the plaintiff that, in each of the golfing seasons from 1981 to 1983, the snack bar opened in March and closed in November. The plaintiff operated the snack bar continuously from August, 1981, until February 13, 1984. Although the snack bar was not open from November until March, the plaintiff stored his possessions in the snack bar and at all times retained a key to the premises. He paid rent to the defendant from August, 1981, to May, 1983 and then to SGA, thereafter. During this period, the plaintiff paid for all utilities, maintenance and repair expenses for the premises, and at no time did he experience any interference with or restriction of his use and possession of the premises.

On February 13, 1984, the defendant wrote to the plaintiff indicating that it was terminating the management agreement which previously existed between them. At about the same time, the defendant placed a padlock on the premises. On March 8, 1984, the defendant again wrote to the plaintiff and informed him of its intention to operate the snack bar itself and requested that the plaintiff remove his possessions from the premises and that if he did not do so the defendant would move them to a storage area.

On March 22, 1984, SGA, by letter, terminated the leasehold interest of the plaintiff and gave him 30 days to relinquish possession of the premises and to remove from it any property belonging to him. The plaintiff removed his property from the premises on or about April 20, 1984. After the plaintiff had removed his property, he received another letter from the defendant in which the defendant wrote, "we will take all steps necessary to prohibit Mr. Berlingo from attempting to enter the Halfway House (snack bar) premises."

The trial court, despite the contention of the defendant that the plaintiff voluntarily surrendered the premises, expressly found that the letters, and in particular the last letter, plus the padlocking of the premises by the defendant amounted to a repossession of the premises by the defendant. The trial court concluded that the defendant's actions constituted a holding and a detaining of the premises with force and strong hand and were in violation of the statute.

Although we might disagree with the trial court's findings and might have found differently had we been sitting as the fact finder, we are precluded from rejecting such a finding where there is evidence to support it. *Lupien* v. *Lupien,* 192 Conn. 443, 446, 472 A.2d 18 (1984). We cannot say that the trial court's finding, that

the defendant violated the forcible entry and detainer statute, was clearly erroneous. There was sufficient evidence to sustain the trial court's conclusions.

The additional claims of error raised by the defendant are without merit.

There is no error.

In this opinion the other judges concurred.