LEONARD BERLINGO *v.* STERLING OCEAN HOUSE, INC.
(12923)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued January 6—decision released April 7, 1987

*William H. Narwold,* for the appellant (defendant).

*D. Seeley Hubbard,* with whom, on the brief, was *James W. Cuminale,* for the appellee (plaintiff).

DANNEHY, J. This is an action of forcible entry and detainer. From a judgment for the plaintiff the defend-

ant appealed to the Appellate Court which found no error. See *Berlingo* v. *Sterling Ocean House, Inc.*, 5 Conn. App. 302, 504 A.2d 516 (1986).[1] We granted certification and now reverse the judgment of the Appellate Court.

This action was commenced as an action of forcible entry and detainer under General Statutes § 47a-43.[2] Proceedings of this nature are necessarily of a summary kind. Section 47a-43 definitively provides that when forcible entry and detainer occurs the party held out of possession may exhibit his complaint to any judge of the Superior Court. Such judge shall then issue a summons to the party complained of, notifying him to

[1] The Appellate Court initially, on September 17, 1985, rendered a decision finding error in the judgment of the trial court and directing that judgment be rendered in favor of the defendant. That decision, published at 497 A.2d 1031 (1985), was superseded when the Appellate Court, on its own motion, then heard reargument, reversed itself and, in an opinion published January 28, 1986, held that there was no error in the trial court's judgment. *Berlingo* v. *Sterling Ocean House, Inc.*, 5 Conn. App. 302, 504 A.2d 516 (1986).

[2] "[General Statutes] Sec. 47a-43. COMPLAINT AND PROCEDURE. FORCIBLE ENTRY AND DETAINER; ENTRY AND DETAINER. (a) When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand or (3) enters into any land, tenement or dwelling unit and causes damage to the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the superior court.

"(b) Such judge shall forthwith issue a summons to the party complained of, directed to some proper officer, to notify him to appear at a specified time and place, within eight days from the exhibition of such complaint, in the superior court for the judicial district wherein the injury complained of was done, to answer to the matters contained in the complaint.

"(c) Such summons shall be served upon the party complained of six days inclusive before the day appointed for trial.

"(d) If, after service of such summons, the party complained of does not appear and defend, the judge shall proceed in the same manner as if he were present."

appear within eight days from the exhibition of the complaint, in the Superior Court for the judicial district wherein the injury complained of occurred and to answer to the matters in the complaint. General Statutes § 47a-43 (b). This summons must be served six days, inclusive, before the day set for trial. General Statutes § 47a-43 (c). The issue joined on a complaint brought under § 47a-43 shall be tried by the judge, unless one of the parties, before the issue is joined, moves for trial by jury. General Statutes § 47a-44; see generally *Twite* v. *Twite,* 150 Conn. 345, 189 A.2d 394 (1963).

The present complaint is brought under § 47a-43. It alleges that the defendant forcefully entered certain premises in the possession of the plaintiff, and continues, with strong hand, to detain possession from him. In his prayer for relief, the plaintiff requests (1) that process be issued against the defendant in the manner prescribed by statute, (2) double money damages and costs, and (3) such other relief as the court finds just and proper.

The record shows that the action was instituted by a complaint dated April 27, 1984. A motion to dismiss the complaint on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted was filed on May 8, 1984. The court apparently denied the motion but failed to file any note or memorandum disclosing the reasons for its action. The case was assigned for trial on May 10, 1984. Prior to trial, the defendant called the court's attention to the fact that the pleadings had not been closed in that the defendant had not filed any answer to the plaintiff's complaint. We infer that the court did not feel bound by the usual rules of pleading, and, over the objection of the defendant, ordered the trial to proceed. The pleadings have not yet been closed to our knowledge.

The trial judge was remiss in ordering the trial to proceed without insisting upon the filing of proper pleadings. The court's order predictably plunged the case into confusion and possible error to the advantage of no one.

We are not unmindful of the time already spent in hearing this case. Justice more than judicial economy requires an attempt to decide the case rather than reversing and remanding with instructions to put the pleadings in proper form before rendition of appropriate judgment. Reluctantly, we have made an independent examination of the whole record. We are satisfied that the facts the court found are those upon which the parties expect the appeal to be decided. We are convinced that we can decide the appeal with certainty and without exceeding the limits of our jurisdiction.

These are the salient facts. In January, 1980, the Stamford Golf Authority (SGA) leased to the defendant certain premises located at the Sterling Farms Golf Course and Recreational Complex in Stamford. The demised premises consisted of space in the main clubhouse to be used as a restaurant and a separate building known as Halfway House. On August 13, 1981, the plaintiff entered into a long term agreement with the defendant to manage the snack bar in Halfway House. Also by the provisions of the agreement, the plaintiff was to have possession of Halfway House and to pay a stated monthly rental for the months of March through November in each year. The plaintiff entered into and took possession of Halfway House under this agreement in August, 1981. Almost from the beginning a controversy existed between the plaintiff and the defendant as to their rights and liabilities in the management agreement. It is not necessary to discuss the particulars of that controversy.

In the spring of 1983, a fire occurred in the main clubhouse which rendered the space occupied by the res-

taurant untenantable. On May 25, 1983, SGA voted, at a special meeting, to terminate its lease with the defendant. SGA then entered into a month-to-month lease with the plaintiff for Halfway House. The plaintiff continued to operate the snack bar under this lease until November, 1983, when he vacated Halfway House. His month-to-month tenancy, however, remained in effect and he continued to keep some of his personal property there until April 20, 1984.

Immediately after the fire in 1983, SGA proceeded to rebuild the restaurant in the main clubhouse. In December, 1983, when the rebuilding was completed, SGA relet both the restaurant and Halfway House to the defendant for the balance of the term of their original lease. Meanwhile, the plaintiff continued in possession of Halfway House. On February 13, 1984, the defendant wrote the plaintiff a letter stating that their management agreement was terminated and requesting that the plaintiff remove his personal property from Halfway House. On the same day that the letter was sent, the defendant padlocked the entrance to Halfway House. The next day, after some conversation with SGA, the defendant turned over the keys to the padlock to SGA. Two days later SGA removed the padlock and placed its own lock on Halfway House. During the two day period in which Halfway House was padlocked by the defendant, the plaintiff did not attempt to enter the premises. It does not appear that he was even aware that the lock was placed on the door. On March 22, 1984, SGA sent a letter to the plaintiff advising him that his periodic tenancy in Halfway House was terminated and notifying him to relinquish possession of Halfway House within thirty days. On April 20, 1984, the plaintiff removed his personal belongings from Halfway House and quit possession.

One week later, on April 27, 1984, the plaintiff commenced an action of forcible entry and detainer against

the defendant. SGA was not made a party to this action. The court rendered judgment for the plaintiff and, upon its denial of the defendant's motion to reconsider and for a new trial, the court issued a writ of restitution restoring the plaintiff to possession of Halfway House. From the judgment rendered for the plaintiff, the defendant appealed to the Appellate Court. That court found no error, holding that the trial court's conclusion that the defendant violated the forcible entry and detainer statute was not clearly erroneous. *Berlingo* v. *Sterling Ocean House, Inc.,* supra, 308B–309. This court granted the defendant's petition for certification to determine whether the decision of the Appellate Court was erroneous.

The process of forcible entry and detainer, provided by our statutes, is in its nature an action by which one in the possession and enjoyment of any land, tenement or dwelling unit, and who has been forcibly deprived of it, may be restored to the possession and enjoyment of that property. This process is for the purpose of restoring one to a possession which has been kept from him by force. See generally *Communiter Break Co.* v. *Scinto,* 196 Conn. 390, 493 A.2d 182 (1985). For a plaintiff to prevail, it must be shown that he was in actual possession at the time of the defendant's entry. Id., 393. Section 47a-43 "was made to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means." *Orentlicherman* v. *Matarese,* 99 Conn. 122, 126, 121 A. 275 (1923).

The facts in the present case show that the plaintiff, on April 27, 1984, did not have a right to possession of Halfway House which entitled him to maintain this action. He claimed under a lease from SGA, but, as we have said, SGA terminated the lease and recovered possession by resort to summary process. The utmost that the evidence shows is that the plaintiff still had a month-to-month lease from SGA on February 13, 1984, and

at that time continued to maintain certain personal property in Halfway House. The only action of the defendant that could be deemed violative of General Statutes § 47a-43 was its padlocking of the door to the premises for two days, February 13 and 14, 1984. At that time, the plaintiff made no attempt to enter the premises or to seek aid from a court. The subsequent padlocking was done under the authority of SGA, which was never made a party to this action. SGA then terminated its lease with the plaintiff by letter dated March 22, 1984, and requested that the plaintiff quit possession within thirty days. The plaintiff complied with this request by quitting possession on April 20, 1984. Thereafter he was not entitled to the demanded premises as against the defendant.

There is error, the judgment of the Appellate Court is reversed and the court is directed to remand the case to the trial court with direction that judgment be rendered for the defendant.

In this opinion the other justices concurred.