[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by Willow Point Company and Mystic Shipyard, Inc. against Yachting Services of Mystic, LTD and Richard Kerr to recover accounts receivable and other charges claimed due from defendant to plaintiff. Defendants deny the validity of the claim and have interposed special defenses. Defendant has also filed a counterclaim for a violation of General Statutes §§ 47a-43 and 42-110a et seq.
The evidence indicates that defendant Richard Kerr was the president and majority stockholder of defendant Yachting Services of Mystic (hereinafter YSM). There is no evidence of his individual liability or that he ever personally guaranteed any debt of the corporate defendant.
At all times material hereto, plaintiffs were the owners of the Mystic Shipyard located in Groton, Connecticut. Sometime prior to January, 1993, the plaintiffs leased the shipyard to Snow, Inc. This corporation, doing business as Mystic Shipyard, operated the business as a tenant.
Snow, Inc. ran into financial difficulties which affected the performance of its obligations under the lease. As a result of this situation, plaintiffs brought two lawsuits against Snow, Inc. and others to recover unpaid rent together with other charges. On May 7, 1997, the parties to these actions entered into a stipulated judgment whereby plaintiff obtained possession of the shipyard. Another term of the judgement required Snow, Inc. to turn over to plaintiffs records of all accounts receivable as of the date of judgment and grant plaintiffs the right to collect such receivables. On the same date, an assignment of the receivables was executed by Snow, Inc. to Mystic Shipyard, Inc. Plaintiffs paid $100,000 for the accounts receivables.
In January, 1993, Snow, Inc., then in possession of the shipyard and doing business as Mystic Shipyard under its lease CT Page 8103 with plaintiffs, entered into an agreement with YSM. The agreement was negotiated by defendant, Richard Kerr, for YSM and Denis Snow for Snow, Inc. YSM was in the business of managing and chartering yachts for the owners and conducting a sailing school. Under the terms of the agreement, Snow, Inc. was to provide office and classroom space, dockage and maintenance. YSM agreed to pay for these items.
At the time plaintiffs took possession of the shipyard from Snow, Inc., under the judgment YSM was operating at the shipyard under its agreement with snow, Inc. The accounts receivable assigned by Snow, Inc. included the YSM account.
Plaintiffs claim that the account due and owing to Snow, Inc. from YSM as of May 7, 1997 for dockage and services was $23,929.16, and that additional charges in the amount of $1,332.60 were incurred after that date. YSM disputes this claim.
Richard Kerr testified that under YSM's agreement it was obligated to pay Snow, Inc. for rental of classroom space, boat space charges, including labor and parts and dockage fees.
Kerr also testified that on September 13, 1993, he loaned Mystic Shipyard $50,000. The debt was secured by a demand note without interest. Subsequently, Snow agreed to a yearly rental charge of $5,000 to YSM and interest to Kerr in the same amount. It was agreed that these two charges would be a washout and that no money would change hands.
Plaintiffs have agreed that YSM is entitled to a 10% discount on the labor and materials charges because of its agreement with Snow, Inc. It is claimed by plaintiffs that for all boats kept by YSM at the shipyard there is a net balance after discount in the amount of $6,424.37 for labor and materials. That figure includes both the accounts receivables and the charges for services rendered after May 7, 1997.
YSM does not dispute this figure but claims that it should be reduced by $5,000 paid by Kerr for YSM on April 8, 1997. Kerr testified that he paid this amount on account knowing that he would be going into the hospital and did not want YSM to fall behind in its obligations. The $5,000 check was payable to Mystic Shipyard, Inc. and was endorsed by Snow, Inc. d/b/a Mystic Shipyard.
CT Page 8104
YSM admits to a balance of $1,423.34. This figure roughly corresponds to plaintiffs' claim less the $5,000 credit. Plaintiffs dispute this and claim that YSM received credit for the $5,000 from Snow, Inc. and that $6,424.37 is due.
Plaintiffs also claim that YSM owes $18,214 for dockage or ship rental fees for the 1997 season.
Kerr testified that YSM agreed with Snow, Inc. to lease dock space at the shipyard for the 1997 season. He testified that under his agreement with Snow, Inc., the $18,214 was an estimate and not a valid debt. His testimony indicated an arrangement with Snow, Inc. by which YSM would await final commitment from its customers. Only then would YSM contract with Snow, Inc. for dock space. YSM would then bill its customers and pay Snow, Inc. as payments were received from the yacht owners.
Plaintiffs argue that this arrangement testified to by Kerr is not worthy of belief since it is not in accordance with the memorandum of agreement executed by Snow and Kerr in 1993, and it would be a poor business practice on the part of Snow, Inc. These arguments are not persuasive, however, since by 1997 the parties were deviating from the 1993 agreement. Also, although it may not have been the best business practice with Snow, Inc.'s business not prospering and with Kerr being a creditor holding the demand note, such an arrangement, as described by Kerr, is believable.
Denis Snow was not available to testify in this action, having died in 1997. The affairs of Snow, Inc. were taken over by Geoffrey Grout who had previously been involved in the operation of the shipyard. Mr. Grout was a defendant in the actions brought by plaintiffs against Snow, Inc. which resulted in the stipulated judgment of May 7, 1997. He assisted in the negotiations which resulted in the judgment but did not testify in this case.
Plaintiffs have alleged a debt due from YSM based upon an assignment of accounts receivable due Snow, Inc. and subsequent charges. The burden of proving the amount due by a fair preponderance of the evidence is on plaintiffs. Swift Co.v. Nexton. Inc., 187 Conn. 540, 542 (1982).
The only direct evidence introduced by plaintiff to prove the amount of their claim is a ten page computer produced statement. This document appears to have been produced on June 16, 1997, over a month after plaintiffs took over operation of the CT Page 8105 shipyard.
When the statement was offered into evidence as Exhibit 3, defendants objected claiming that it was not competent evidence of the debt. It was, however, admitted into evidence under the business entry exception to the rule against hearsay now General Statutes § 52-180. Although it was admitted into evidence, the weight and probative force of the document is up to the trier of facts. Emhart Industries Inc. v. Amalgamated Local Union, 376 (U.A.W) 190 Conn. 371, 404 (1983).
Even though business records have been admitted into evidence, such records carry no prescriptions of accuracy, their credibility remains a question to the trier of fact. State v.Ward, 172 Conn. 163, 170 (1976). Entries in business records must be based either on personal knowledge of the entrant or on the information of others with personal knowledge who are under a business duty to transmit such information to the entrant. Business records generated by computer present particular problems for the trier of fact. American Oil Co. v. Valenti,179 Conn. 349, 358 (1979) Shawmut Bank Connecticut, N.A. v.Connecticut Limousine Services, Inc., 40 Conn. App. 268, 276
(1996).
Here there was no evidence as to how Exhibit 3 was produced on how the information was put into the record.[1] In this regard, it is significant to note that $5,000 payment made by YSM on April 8, 1997 does not appear on the statement, but the statement does reflect charges made after that date.
The only credible evidence concerning charges and credits was that supplied by Kerr. It must then be concluded that plaintiffs have not proven that YSM is liable for the $18,214 claimed for dock rental fees or the boat maintenance charges except for the $1,423.37 admitted by Kerr.
In its first counterclaim, defendant YSM alleges a violation of General Statutes § 47a-43. This statute covering forcible entry and detainer was enacted to protect peaceable possession from disturbance by any but lawful and orderly means. Daddona v.Liberty Mobile Home Sales, Inc., 209 Conn. 243, 257 (1988). An action for forcible entry and detainer lies through the property involved is commercial. Berlingo v. Sterling Ocean House. Inc.5 Conn. App. 302 (1985). On a complaint for forcible entry and detainer the burden of proof is on the complaint to prove the CT Page 8106 facts alleged by a fair preponderance of the evidence. Stiles v.Homer, 21 Conn. 507 (1852).
The evidence establishes, that at the time plaintiffs went into possession of the shipyard on May 7, 1997, defendant YSM was operating its boat chartering business on the premises under its agreement with Snow, Inc. Sometime after May 7, 1997, plaintiffs' principal Charles Beaumont advised Mr. Kerr, YSM's principal, of the account which he claimed was owed by defendants and requested payment. When defendants declined to pay this bill, relations between the parties deteriorated. It was in this less than cordial atmosphere that the events which led to this counterclaim took place.
In the first count of the counterclaim, defendants claim that plaintiffs violated § 47a-43 by forcing YSM from the premises by a lockout.
The counterclaim alleges three specific acts which constitute the lockout.
First, it is alleged that plaintiff entered the premises leased to YSM and changed the locks on the doors thereby preventing and denying YSM access to the premises.
The evidence shows that plaintiffs took over the shipyard on May 7, 1997. On May 27th, the locks were changed on some doors including YSM's office. Kerr testified that when he asked for a key, Beaumont informed him he would not get it until he paid his bill.
The evidence indicates that the primary reason for the change in locks, however, was a concern for security. Snow had allowed customers access to the building and Beaumont did not know who had keys to the premises. The new keys were not available on May 27, 1997. This may have caused some inconveniences to YSM because Beaumont, who had a key, was required to lock the door in the evening. He did this after business hours but it did require YSM to terminate its activity for the day.
There may have been some discussion of the bill incidental to the key incident, but it cannot be found that Kerr was told that he would not get the key until he paid the bill claimed by plaintiff. The next day, YSM and another business, a yacht broker, received their keys and no further problems concerning CT Page 8107 access arose.
Defendants also allege in the counterclaim that plaintiffs locked and bolted a door to the back stairway, thereby hindering access to the fire exit of the building.
The evidence indicated that this was a door in common use and it had been locked at times in the past. The lock had been installed by Snow. After Beaumont informed Kerr that the door would remain locked someone called the fire marshal who took no action. It cannot be found that the locking of this door caused any great inconveniences to YSM.
It was also alleged in the counterclaim that plaintiffs violated § 47a-43 by locking the shower and restroom facilities precluding access to such facilities by defendants and YSM's customers.
Access to shower and restroom facilities were important, if not essential, to the operation of YSM's business. This evidence, however, does not show that plaintiffs caused the facilities to be locked. At times, customers could and did lock such doors inadvertently. Plaintiffs' employees would unlock the doors when the problem was called to their attention.
The unpleasant situation between the parties continued with plaintiffs demanding payment of what was considered a legitimate bill and defendants refusing payment. The situation was exacerbated by plaintiffs' refusal to work on YSM's boats. On June 14, 1997, YSM vacated the premises and moved to another shipyard.
The evidence does not permit a finding that YSM was locked out of the premises or that force or threats which would constitute a violation of a § 47a-43 were perpetrated by plaintiffs.
The conclusion, with respect to the first count of the counterclaim, is conclusive of the second count of the counterclaim.
Accordingly, on the complaint judgment is rendered in favor of defendant Richard Kerr and against plaintiffs, and in favor of plaintiffs against defendant Yachting Services of Mystic, LTD in the amount of $1,423.34. On both counts of the counterclaim CT Page 8108 judgment is rendered in favor of the plaintiffs against the defendants.
Joseph J. Purtill Judge Trial Referee