RUSSELL P. BLOW *v.* DONALD A. KONETCHY
(AC 28512)

DiPentima, McLachlan and Gruendel, Js.

778

Argued February 20—officially released May 20, 2008

*Scott W. Jezek*, for the appellant (plaintiff).

*Joseph E. Milardo, Jr.*, with whom, on the brief, was *Linda J. Latimer*, for the appellee (defendant).

McLACHLAN, J. The present appeal arises out of a quiet title action involving a driveway area between adjoining landowners. The plaintiff, Russell P. Blow, appeals from the judgment rendered by the trial court in favor of the defendant, Donald A. Konetchy. On appeal, the plaintiff claims that the court improperly (1) treated his claim as one of adverse possession and, as a result, applied a higher standard of proof, (2) found consent and used that as a basis for denying his prescriptive easement claim, (3) found that he had built his porch on the south side of his property line, (4) found that the original grant of easement was located three feet north of the defendant's residence, (5) found in favor of the defendant on his counterclaim of entry and detainer, and (6) reformed the original grant of easement to exclude parking and storage. We affirm the judgment of the trial court.

The following facts, as found by the court in its memorandum of decision, are relevant to the resolution of the plaintiff's appeal. The plaintiff and the defendant are neighboring property owners in the Lake Pocotopaug Terrace subdivision in the town of East Hampton. The plaintiff owns lot 46, which he acquired by warranty deed in 1978. The defendant owns lots 44 and 45 located to the south of the plaintiff's lot, which he acquired by warranty deed in 2004. The common boundary line runs generally to the east and west.

In 1983, the plaintiff constructed an addition to his home and added a garage. This construction narrowed the space between the buildings of the plaintiff and the defendant. As a result, the plaintiff sought an easement for the use of his neighbors' driveway from the defendant's predecessors in title. According to the court: "The defendant's predecessors in title, Bernard Wilson, Jr., and June F. Wilson, granted the plaintiff use of a

portion of their property as part of his driveway. This agreement was subsequently formalized in a 'grant of easement' . . . dated April 17, 1989."[1] (Citation omitted.) The grant of easement lies wholly on the defendant's land.[2]

In 2004, after the defendant purchased his property, he discovered "encroachments by the plaintiff on the rear yard of his property." Subsequently, he filed a notice affecting title to the land under General Statutes § 47-38.[3] Although the plaintiff had an easement, which granted him the use of the driveway as a right-of-way, the plaintiff had parked his vehicles on the driveway and left them there when he traveled during the winter months. The defendant objected to the use of the entire driveway for parking and storage, especially a three foot wide area wholly within the defendant's land, which he claimed was not contemplated or referenced in the original grant of easement.

On October 3, 2005, the plaintiff initiated this action. The plaintiff's amended complaint claims, inter alia,

[1] In 1989, the plaintiff received two easements from the defendant's predecessors in title. One of the easements concerned drainage from the plaintiff's property over the rear of the defendant's property. The other easement, the one at issue in the present case, permitted the plaintiff to "use, maintain, operate, construct, reconstruct, repair and replace a driveway over and across" a portion of the defendant's property.

[2] The court found: "The 'right-of-way' referenced in the 'grant of easement' was erroneously depicted on a map . . . filed on June 30, 1989, in the East Hampton land records as being on the property of the plaintiff and south of their common boundary three feet north of the [defendant's] residence. The grant of easement actually places the right-of-way on the defendant's property." (Citation omitted.)

[3] General Statutes § 47-38 provides: "The owner of land over which a right-of-way or other easement is claimed or used may give notice in writing, to the person claiming or using the privilege, of his intention to dispute the right-of-way or other easement and to prevent the other party from acquiring the right; and the notice, being served and recorded as provided in sections 47-39 and 47-40, shall be deemed an interruption of the use and shall prevent the acquiring of a right thereto by the continuance of the use for any length of time thereafter."

that he acquired a legal right to the use of the three foot area of the defendant's driveway because he "used and enjoyed [this portion of the defendant's property] for more than fifteen years prior to the commencement of [his] action, and such use and enjoyment ha[d] been at all times open, visible, continuous, uninterrupted, and under a claim of right . . . ."[4] The plaintiff requested that the court determine the rights of the parties, release the notice affecting the land and grant further relief that the court deemed proper both at law and in equity. On January 30, 2006, the defendant filed his answer to the plaintiff's amended complaint and his counterclaim.[5]

On January 19, 2007, the court rendered judgment in favor of the defendant on both the plaintiff's claim and the defendant's counterclaim. As the court explained: "The disputed area is the area within three feet of the defendant's [residence], which is not encompassed within the area delineated in the grant of easement. In this area, the plaintiff parked motor vehicles, trailers, boats and other material immediately adjacent to the defendant's residence within the three foot zone at issue." The court also stated: "Further, these vehicles were left in the area for extended periods, denying the defendant access to the exterior of his residence."

The court acknowledged that the plaintiff had asserted a prescriptive easement claim; however, it found that the plaintiff never enjoyed exclusive use of the disputed property. It also found that the plaintiff

[4] In his complaint, the plaintiff alleged this three foot area as the "portion located south of the [p]laintiff's common line with the [d]efendant and extending southerly to the six inch bituminous curb located on the northerly side of the [d]efendant's existing house and extending easterly from Brook Trail to a point off the southeast most corner of the [p]laintiff's existing residence and marked by the end of the bituminous paving . . . ."

[5] In his counterclaim, the defendant asserted a claim of entry and detainer against the plaintiff pursuant to General Statutes § 47a-43 (a).

had used the three foot wide disputed area of the driveway with the consent of the defendant's predecessor in title and the defendant. The court enjoined the plaintiff from "parking vehicles, storing materials or storing any other of his property on or in the right-of-way area at any time that he is not physically present at his residence" and that the "right-of-way is to be used as a driveway, not a parking lot or storage area."[6]

Subsequently, the plaintiff moved for an articulation of the court's decision. In its articulation, the court addressed the plaintiff's request for the court to explain where in the record the plaintiff had made a claim of adverse possession and whether a claim for a prescriptive easement had been made. The court construed the plaintiff's claims as an adverse possession claim in addition to a prescriptive easement claim, finding that the prescriptive easement claim failed because the use had not been continuous and uninterrupted. This appeal followed.

I

The plaintiff first claims that the court improperly applied the wrong burden of proof because it determined his case on the basis of a theory of adverse possession rather than as a prescriptive easement claim. The plaintiff contends that this was improper because an adverse possession claim requires a higher burden of proof, the clear and convincing standard, as opposed to the burden of proof for an easement by prescription, which is the preponderance of the evidence standard. "When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 455, 844 A.2d 836 (2004).

---

[6] The court denied the defendant's request for attorney's fees, and it awarded the defendant his cost of $1000 for the survey of his property.

The plaintiff's argument is predicated on the court's language in its memorandum of decision. Specifically, the court stated that the plaintiff's claim "is based on a theory of adverse possession." As the plaintiff points out, "claims of adverse possession and prescriptive easements, though requiring proof of similar elements, are nevertheless distinct causes of action."[7] *Smith* v. *Muellner*, 283 Conn. 510, 536, 932 A.2d 382 (2007), citing *Schulz* v. *Syvertsen*, 219 Conn. 81, 92 n.8, 591 A.2d 804 (1991).

"The proper inquiry in evaluating a claim that easement rights have been acquired by prescription is whether the claimant adversely *used* the property at issue and not whether he adversely *possessed* that property. . . . In addition, the two types of claims differ as to the burden of proof to be applied. Claims of adverse possession are evaluated under the heightened standard of clear and positive proof, whereas claims of prescriptive easements are assessed under the preponderance of the evidence standard." (Citation omitted; emphasis in original.) *Smith* v. *Muellner*, supra, 283 Conn. 536. The plaintiff asserts that because the court used the term "adverse possession" in describing his prescriptive

---

[7] "It is well established that one claiming title to real property by adverse possession must prove by clear and positive evidence each element of actual, open, notorious, hostile, continuous and exclusive possession for the full fifteen year statutory period." *Mulle* v. *McCauley*, 102 Conn. App. 803, 809, 927 A.2d 921, cert. denied, 284 Conn. 907, 931 A.2d 265 (2007).

"[A] prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. . . . The standard of proof that is required is a fair preponderance of the evidence. . . . To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised. . . . The use must occur without license or permission and must be unaccompanied by any recognition of [the right of the owner of the servient tenement] to stop such use. . . . Use by express or implied permission or license cannot ripen into an easement by prescription." (Citations omitted; internal quotation marks omitted.) *Boccanfuso* v. *Green*, 91 Conn. App. 296, 309, 880 A.2d 889 (2005).

easement claim, it necessarily held him to the higher burden of proof associated with adverse possession claims. We do not agree.

The court addressed its use of the term "adverse possession" and the burden of proof it applied in its articulation filed May 18, 2007. It stated: "The plaintiff requests the court to articulate where on the record a claim for adverse possession was made and whether a claim for prescriptive easement was made. The plaintiff in his posttrial brief, page three, states the following: 'Further, the plaintiff claims that regardless of the proper measurement, he is entitled to an easement over the entire paved area either by deed or prescription . . . .' The court construed this as an adverse possession claim *in addition* to the prescriptive easement claim." (Emphasis added.) Additionally, the court wrote: "The court [was] asked to articulate the elements of proof it applied to the plaintiff's claims. The court indicates at page two that it is evaluating the plaintiff's claim of prescriptive easement. In proving its burden of establishing a prescriptive easement, the plaintiff was obligated to prove by a *preponderance of the evidence* that his use of the area claimed was '(1) open and visible, (2) continuous and uninterrupted for fifteen years, and (3) engaged in under a claim or right.' . . . The exclusive possession reference was to the necessary element of the adverse possession claim. The prescriptive easement claim failed, as the use was not continuous and uninterrupted with respect to the three foot area adjacent to the defendant's residence." (Emphasis added.). Therefore, the plaintiff's first claim fails because the court addressed both theories and applied the appropriate standard of proof for each.[8]

---

[8] The defendant contends that the court correctly applied both theories because the plaintiff opened the door to an adverse possession claim. Additionally, the defendant asserts that because the plaintiff used the land for storage rather than passage, an adverse possession claim is the appropriate claim on the basis of his use.

## II

The plaintiff next claims that the court improperly used consent as a basis for denying his prescriptive easement claim. The plaintiff claims that there was no consent and that even if there were consent, consent is not synonymous with permission and, therefore, is not a basis for defeating his prescriptive easement claim. The plaintiff relies on *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 829 A.2d 8 (2003), to support this argument. *Gallo-Mure*, however, is inapplicable. Here, as the court stated in its articulation, the plaintiff's prescriptive easement claim failed not because of consent but because the use was not continuous and uninterrupted, which is a critical element of the plaintiff's prescriptive easement claim.

## III

The plaintiff next claims that the court erroneously found that he had built his porch on the south side of his property along the common line of the defendant's property. The plaintiff refers to the following statements in the court's memorandum of decision: "The factual origin of the suit begins with the plaintiff's expansion of his home and garage in approximately August, 1983. The expansion involved the narrowing of the space between the plaintiff's and the defendant's properties by the plaintiff's addition of the porch on the south side of the residence." The transcript reflects that the plaintiff was using the porch as a reference point but that he testified that he did not build the porch when he built the addition of the garage. Rather, the addition of the garage was the construction that actually narrowed the space between the properties of the plaintiff and the defendant.[9] Thus, he claims that the court's

[9] The plaintiff testified as follows:

"Q. And the space between yours and [the defendant's] house is relatively narrow, isn't it?

"A. Yes, it is.

"Q. Do you have any estimate as to width or have you ever measured it?

finding that the porch was built by the plaintiff on the south side, when it was not located on the south side or built by the plaintiff, suggests that the construction of the porch somehow narrowed the space between the plaintiff's and the defendant's houses. Accordingly, the plaintiff claims that this finding is contrary to all the evidence and is reversible error.

In opposition, the defendant asserts that this inadvertent mistake was harmless and of no consequence to the case at hand. The testimony that the court relied on was confusing and could have led it to believe that the addition included a porch. The defendant concedes that this was a mistake but, nonetheless, that it was irrelevant and harmless.

Our review of factual determinations requires that we do not attempt to retry a trial court's factual findings. Unless those findings are clearly erroneous, we do not disturb them. *Lucas* v. *Lucas*, 88 Conn. App. 246, 251, 869 A.2d 239 (2005).

Although the court may have misstated the time of construction and the location of the porch, the plaintiff has failed to provide any analysis that would demonstrate how this factual inaccuracy tainted the court's ultimate determination in the present case. See *Winchester* v. *McCue*, 91 Conn. App. 721, 734, 882 A.2d 143 ("[u]nder . . . circumstances involving minor quibbles over nomenclature and technically inaccurate findings, we have declined to order a new trial"), cert. denied, 276 Conn. 922, 888 A.2d 91 (2005); see also *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 703–704 n.1, 533 A.2d 1226 (1987) ("[T]he court was incorrect in describing the defendant as a 'practicing attorney.' . . . This factual error does not, however, affect the disposition of this

---

"A. Between the two houses it has—where my porch and his house begins, is, probably, about twelve and one-half feet, maybe, at the narrowest point. Prior to that, it's more."

case."); *Goodsell* v. *Brighenti*, 128 Conn. 581, 584–85, 24 A.2d 834 (1942) (stating, "we are of the opinion that the indicated use of east for west was rather the inadvertent mistake which occurs occasionally in such circumstances and that it had no material effect on the conclusion reached which must be based on the events as they actually occurred"). Regardless of when the porch was constructed or where the porch was located, the court found that the plaintiff did not satisfy his burden of establishing an easement by prescription or title by adverse possession. The time of construction and the location of the porch were immaterial to the court's holding.

IV

The plaintiff's fourth claim is that the court improperly found that the original grant of easement was located three feet north of the defendant's residence. In support of this contention, the plaintiff argues that "the original grant of easement . . . contained two distance marks with respect to the location of the easement. First, it showed it five feet in width from the [plaintiff's] southerly line. Second, as the court found, it also shows it as three feet and parallel to the north line of the [defendant's] residence. There is insufficient distance between the [plaintiff's] southerly line and the [defendant's] residence for both calls to be satisfied in their entirety." The plaintiff points out that the surveys of each party differ as to the location of the right-of-way. On the basis of the differing surveys, the plaintiff asserts that one of the readings, the defendant's survey, causes the easement to become narrower and taper toward the rear or east side of the plaintiff's property, while his survey gives him the full, original five foot easement.

Conversely, the defendant argues that the plaintiff is incorrect because "the surveys in fact agree as to the

location of the south line of the deeded easement being three feet north of the [defendant's] home, which supports the trial court's finding."[10] We agree with the defendant.

"When the factual basis of a trial court's decision is challenged, [an appellate court's] function is to determine whether, in light of the pleadings and evidence in the whole record, these findings of fact are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Muellner*, supra, 283 Conn. 533.

The plaintiff argues that the court's finding is clearly erroneous because the court found the point of measurement to be from the defendant's house, thus, depriving him of the full five foot easement. He claims that the original survey contained an ambiguity that must be construed against the grantor, the defendant. In the present case, the court was presented with several contradicting surveys that each placed the right-of-way in

---

[10] The defendant correctly explains the origin of the issues with the different surveys when he writes: "These more recent surveys of the original right-of-way exposed the erroneous depiction of the placement of the easement on the original survey map by its placement of the easement on the [plaintiff's] property, rather than on the [defendant's]. . . . This fact is in keeping with the [defendant's] need for a reasonable passing from the front to [the] rear of his property and to access the north side yards side of his home in emergencies and for maintenance and repairs." He further states: "If the right-of-way runs from the common boundary line, as [the plaintiff] claims it should, the plaintiff argues that [he] then has the benefit of a full five foot width easement rather than an easement, which runs from three feet from the [defendant's] dwelling, which causes the easement to become narrower."

a slightly different location. After a careful review of the surveys and the record before us, we are not persuaded that the court's finding was clearly erroneous. The court relied on the survey that depicted the southerly boundary of the granted right-of-way to be three feet from the defendant's residence. In doing so, the court was respecting the original intention of the parties when they executed the grant of easement in 1989. Accordingly, the plaintiff's fourth claim fails.

V

The plaintiff's next claim is that the court improperly found in favor of the defendant on his counterclaim for entry and detainer. The plaintiff asserts that the facts and circumstances of this case do not support an entry and detainer claim. We disagree.

"The process of forcible entry and detainer, provided by our statutes, is in its nature an action by which one in the possession and enjoyment of any land, tenement or dwelling unit, and who has been forcibly deprived of it, may be restored to the possession and enjoyment of that property. This process is for the purpose of restoring one to a possession which has been kept from him by force. . . . For a plaintiff to prevail, it must be shown that he was in actual possession at the time of the defendant's entry. . . . [General Statutes §] 47a-43 was made to protect a person in such possession . . . from disturbance by any but lawful and orderly means." (Citations omitted; internal quotation marks omitted.) *Berlingo* v. *Sterling Ocean House, Inc.*, 203 Conn. 103, 108, 523 A.2d 888 (1987).

"A plaintiff suing under the forcible entry and detainer statute must prove his *actual* possession of the land or property from which he claims to have been dispossessed." (Emphasis in original.) *Communiter Break Co.* v. *Scinto*, 196 Conn. 390, 393, 493 A.2d 182 (1985). "The question of whether the plaintiff was in

actual possession at the time of the defendant's entry is one for the trier of fact. . . . Generally, the inquiry is whether the individual has exercised the dominion and control that owners of like property usually exercise. . . . [I]t is not necessary that there be a continuous personal presence on the land by the person maintaining the action. There, however, must be exercised at least some actual physical control, with the intent and apparent purpose of asserting dominion." (Citations omitted.) Id., 394.

The plaintiff claims that the defendant was never in possession of the area in dispute.[11] On the basis of the facts before the court, it was evident that the defendant had actual possession of the disputed area because he "exercised the dominion and control that owners of like property usually exercise" over the disputed area. (Internal quotation marks omitted.) *Evans* v. *Weissberg*, 87 Conn. App. 180, 182, 866 A.2d 667 (2005). Moreover, the disputed area of land is immediately adjacent to the defendant's house, and the defendant has to walk through that area to gain access to his windows and utility box and for other various reasons.[12]

The plaintiff next argues that the entry and detainer statute is inapplicable because there was no forcible entry. To support his argument, the plaintiff cites *Hjorth*

[11] The plaintiff further argues that because the defendant did not take possession of his property until after the fifteen year statutory period for the plaintiff's prescriptive easement claim had run, the plaintiff could not be in violation of the defendant's rights. This argument fails because the court concluded that the plaintiff did not satisfy all of the elements of a prescriptive easement.

[12] The plaintiff also claims that § 47a-43, the entry and detainer statute, only applies to landlord-tenant situations. There are, however, cases in which this court applied § 47a-43 to other situations. See *Evans* v. *Weissberg*, supra, 87 Conn. App. 180 (affirming court's finding in favor of plaintiff's entry and detainer claim when defendants erected fence on property that court concluded plaintiff was in actual possession of at time defendants erected fence).

v. *Clark*, 13 Conn. Sup. 409 (1945), in which a judge of the Court of Common Pleas stated: "To make a detainer forcible, there must be a detention with what is called strong hand—as, with an unusual number of people, with weapons, with menaces—or accompanied with some circumstances of actual violence, calculated to intimidate the plaintiff, and deter him from asserting or maintaining his right." (Internal quotation marks omitted.). Id., 411. Here, the court concluded that the plaintiff's behavior of parking his vehicles, storing materials on the driveway and leaving manure on the driveway; see footnote 14; was menacing and led to intimidation of the defendant, making the detainer forcible.[13]

Moreover, the court found that the defendant's testimony supported his entry and detainer claim. In its articulation, the court wrote: "The factual basis for the court's finding that the defendant proved his claim for entry and detainer is contained in the testimony of the defendant. The defendant testified credibly as to the plaintiff's actions in interfering with his efforts to put a fence on his property. The plaintiff further parked vehicles and stored other property directly adjacent to the defendant's home and on the defendant's property."[14] Thus, the plaintiff's fifth claim fails.

---

[13] We have affirmed a court's finding of an entry and detainer claim when there were indications of violent designs but no actual violence. See *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 920 A.2d 316 (2007); see generally *Sullivan* v. *Delisa*, 101 Conn. App. 605, 923 A.2d 760, cert. denied, 283 Conn. 908, 928 A.2d 540 (2007).

[14] The record is replete with examples of the plaintiff's behavior that supports the defendant's entry and detainer claim. For example, one of the exhibits is a photograph of the defendant trying to remove snow from his driveway with a snowblower after a large snowstorm. The photograph features the defendant trying to remove the snow around the plaintiff's parked cars to no avail. This photograph illustrates the plaintiff's blatant disregard for the defendant's quiet possession of his real property. Furthermore, the defendant asserts that after the two parties entered into an agreement when he sought injunctive relief, he came home to find manure and earthen materials deposited in the very area where the plaintiff had parked his cars.

## VI

The plaintiff's last claim is that the court improperly reformed the original grant of easement to exclude parking and storage. He asserts that the defendant never requested a reformation of the deed and, even if he did request reformation, the plaintiff did not have notice of such claim.

A cause of action for reformation of a deed "rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other." (Internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 531, 441 A.2d 151 (1981). "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." (Internal quotation marks omitted.) Id., 532.

The defendant responds to the plaintiff's argument that reformation of the easement was improper with the fact that the plaintiff specifically claimed in his prayer for relief for "such other and further relief as the court deems proper both at law and in equity." On the basis of this request, the defendant asserts that even if a claim of reformation was not enumerated, it clearly falls under the equitable powers of the trial court.

"[T]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial

justice. . . . For that reason, equitable remedies are not bound by formula but are molded to the needs of justice." (Citations omitted; internal quotation marks omitted.) *McKeever* v. *Fiore*, 78 Conn. App. 783, 788, 829 A.2d 846 (2003).

In its articulation, the court explained that it enjoined the plaintiff from using the easement area for parking and reformed the grant of easement accordingly because "the grant contained in the easement and the legal requirement that the use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit." On the basis of its articulation, and because reformation falls under the equitable powers of the court, the plaintiff's sixth, and final, claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.