LLOYD GLASSON ET AL. *v.* TOWN OF PORTLAND
(3199)

HULL, BORDEN and DALY, Js.

Argued December 11, 1985—decision released February 11, 1986

*John W. Lemega,* with whom was *Joseph G. Lynch,* for the appellant (named defendant).

*Joseph P. Bransfield, Jr.,* for the appellees (plaintiffs).

HULL, J. The defendant town of Portland[1] appeals from the trial court's judgment finding it liable to the plaintiffs, Lloyd and Kathleen Glasson, for damage to their property caused by water runoff and enjoining it permanently from discharging surface water onto their land[2] by means of a drainage pipe. The town claims two errors: (1) that there was insufficient evidence to support the order of injunctive relief; and (2) even if there were sufficient evidence to justify the

---

[1] Richard D. McGinley, developer of Scenic Farms, was made a third party defendant by the town of Portland. David B. Mylchreest, the designer of the Scenic Farms water flow system, was made a third party defendant by McGinley. By stipulation of the parties, these third party actions were to be tried separately from the original action. Accordingly, McGinley and Mylchreest are not involved in this appeal.

[2] The parties agreed that the trial was to be limited to the issue of liability and to a determination of whether an injunction should issue. It was further agreed that if liability were found, a further hearing would be had as to damages.

order of an injunction, it was entered without proper notice to the town and without providing it a chance to be heard on the scope of the injunction. We find that while the court's decision to impose liability on the town was not clearly erroneous, its issuance of the injunction against the town without notice was in error.[3]

The plaintiffs' complaint was in five counts as follows: first count, a violation of General Statutes § 13a-138;[4] second count, nuisance; third count, trespass; fourth count, nuisance, based on the town's approval of the Scenic Farm subdivision which allegedly aggravated the water runoff condition; and fifth count, trespass, based upon the town's approval of the subdivision. The court found for the plaintiffs on the first, second and fourth counts and impliedly for the town on the third and fifth counts.

The underlying facts as found by the court are not substantially in dispute. Since 1970, the plaintiffs have owned and lived in the town of Portland on premises abutting Old Marlborough Turnpike, a town road. The

---

[3] A hearing in damages has not yet been held. Ordinarily, when a judgment as to liability has been entered but damages have not been determined, there is no appealable final judgment. *Pinnix* v. *LaMorte*, 182 Conn. 342, 343, 438 A.2d 102 (1980). In this case, however, the injunction has determined the town's rights in a manner that no further proceedings can affect. See *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 85, 495 A.2d 1063 (1985). On the basis of the fact that there has been a finding of liability *and* an order of relief, we hold that an appealable final judgment does exist in this case.

[4] General Statutes § 13a-138 provides in pertinent part: "(a) Persons authorized to construct or to repair highways may make or clear any watercourse or place for draining off the water therefrom into or through any person's land so far as necessary to drain off such water and, when it is necessary to make any drain upon or through any person's land for the purpose named in this section, it shall be done in such way as to do the least damage to such land.

"(b) Nothing in this section shall be so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house, or into or upon yards and enclosures used exclusively for the storage and sale of goods and merchandise."

plaintiffs' land is intersected by Reservoir Brook located in the center of a small valley. The plaintiffs' home is on a slope east of the brook. The slope rises almost vertically in an easterly direction to the point where it is crossed by Old Marlborough Turnpike.

Before 1976, water drained from the turnpike by a ditch on the east side of the road. This ditch ran to a culvert running under the road which carried water to the slope on the westerly side of the road. The water flowed down from the culvert a distance of four to ten feet where it landed on the steep slope above the plaintiffs' residence and thereafter flowed into Reservoir Brook.

In 1976, two catch basins were installed on the easterly side of the turnpike connected to each other by an eighteen inch concrete pipe. These basins were installed to allow water to run in a westerly direction into another catch basin. This basin in turn was connected to an existing eighteen inch metal culvert which crossed to the west side of the road. These drainage improvements were made with the town's approval by a land developer to serve a residential subdivision which was to be built on the east side of the road opposite the slope above the plaintiffs' land. The town also put in a new eighteen inch metal culvert to carry water from a third catch basin to the slope leading down to the plaintiffs' land.

In April, 1976, the town planning and zoning commission approved the subdivision, Scenic Farms. Shortly after Scenic Farms was built, increasing amounts of water and sand ran down from the road to the brook. While town employees came and cleared such material from the plaintiffs' swimming area, sand and silt continued to go down into the swimming area. There was also increasing slope erosion, a deepening of the path the water followed, undermining of a por-

tion of the slope, tearing away of large patches of soil and vegetation and extensive damage of the root system of large trees.

In 1976 or 1977, the town dumped several truck loads of stone on the steep slope. Much of the stone went well onto the plaintiffs' land. In 1979, water coming down the hill undermined and broke a pipe leading from the plaintiffs' septic tank.

The court made further findings. The continued discharge of water was a matter of poor engineering. The resulting erosion undercut the abutment to the plaintiffs' foot bridge, caused the bridge to break, destroyed the bank of soil above the plaintiffs' home and caused soil cover and vegetation to slide down to the plaintiffs' residence. The court also noted that such a steep slope of water puts pressure on the soil, washes it out from under the rocks, and creates a very unstable condition. The court determined that if the problem were allowed to persist, it could undermine Old Marlborough Turnpike, and that the town had made no effort to stabilize the slope.

On the basis of these findings, the court held for the plaintiffs on counts one, two and four and stated that the plaintiffs' counsel should prepare an appropriate injunctive decree. The trial court thereafter signed a judgment enjoining the town from discharging surface water onto the plaintiffs' land through a drainage pipe. The judgment made the injunction effective at midnight on June 30, 1984, and levied a $200 per day penalty against the town for noncompliance.

The town first claims that the evidence was insufficient to support the court's decision. We will not tarry long in considering the town's claim of insufficient evidence. Through this argument, the town is basically attempting to have this court retry the facts. This a function we do not perform. "This court will not reverse

the decision of the trial court unless it is found to be 'clearly erroneous in light of the evidence and the pleadings in the record as a whole.' *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book § 3060D. The factual conclusions of the trial court 'must stand unless they are legally and logically inconsistent with the facts found.' *State* v. *Lasher,* 190 Conn. 259, 267, 460 A.2d 970 (1983). Weighing the evidence is the function of the trier of fact and this court will not usurp that role. *Gallo* v. *Gallo,* 184 Conn. 36, 38, 440 A.2d 782 (1981)." *Jones* v. *Litchfield,* 1 Conn. App. 40, 42, 467 A.2d 936 (1983), cert. denied, 192 Conn. 802, 470 A.2d 1218 (1984).

The town also claims that the court, in finding it liable on the first count for violation of General Statutes § 13a-138, and on the second and fourth counts for committing common law nuisance, ignored the reasonable alternatives test applicable to both causes of action. In support of its statutory claim, the town argues that General Statutes § 13a-138 permits it to use drains in roads when no alternative is available. Concerning the nuisance counts, the town claims that the appropriate test considers "all the relevant circumstances, including such factors as the amount of harm caused, its foreseeability, the purpose or motive with which the act was done, and the consideration of whether the utility of the use of the land outweighed the gravity of the harm resulting." (Citations omitted.) *Peterson* v. *Oxford,* 189 Conn. 740, 745, 459 A.2d 100 (1983), quoting *Page Motor Co.* v. *Baker,* 182 Conn. 484, 490, 494, 438 A.2d 739 (1980) (*Bogdanski, J.,* dissenting).

Whichever test is applied, the court's findings provide a more than sufficient basis for the imposition of liability on the town. When deciding the statutory action, the court specifically referred to *Postemski* v.

*Watrous,* 151 Conn. 183, 195 A.2d 425 (1963), which the town cites for the proposition that the statute "permits drains to be built only when necessary, and if there is a reasonable alternative course open, that course must be taken." (Citations omitted.) Id., 188. The town's arguments also overlook the court's conclusions that the continued discharge of water on the slope was not unavoidable but rather was a result of poor engineering and that there was no indication that any effort has been made to stabilize the slope. It also ignores the court's statement that the remedy sought was a "cessation of the continued *unreasonable intrusion"* upon the plaintiffs' premises. (Emphasis added.) These findings are ample to support the court's decision to impose liability on the town.

The main thrust of the town's argument concerns the manner in which the injunction was granted and its broad scope. As to the scope of the injunction, the town claims (1) that cessation of the flow of water onto the plaintiffs' property was a physical impossibility, (2) that each potential solution suggested by the plaintiffs' experts requires that the town effect alterations to the plaintiffs' property, and (3) that the decree was devastatingly broad and financially onerous. What the town is saying, to use colloquial terms, is that to comply with such a broad injunction it would have to swallow the water involved.

The town also challenges the procedure used to obtain the injunction. After concluding that an injunction should issue, the court, in the judgment, instructed counsel for the plaintiffs "to prepare an appropriate injunctive decree." No copy of the ensuing proposed decree prepared by the plaintiffs' counsel, was sent to the town so that it could be heard on the scope and nature of the injunction.[5]

---

[5] In oral argument in this court, counsel for the plaintiffs commendably took responsibility for this lack of notice to the defendant and admitted

The town's challenge to the manner in which the injunction was issued is dispositive. "It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard." *Ackerman* v. *Union & New Haven Trust Co.,* 91 Conn. 500, 508, 100 A. 22 (1917); *City Trust Co.* v. *Bulkley,* 151 Conn. 598, 601, 201 A.2d 196 (1964). Proper notice is necessary because " '[d]ue process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard.' *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 526–27, 290 A.2d 327 [1971]; *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 383, 260 A.2d 596 [1969]; *Benz* v. *Walker,* 154 Conn. 74, 77, 221 A.2d 841 [1966]; see also *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 [1950]." *Lechner* v. *Holmberg,* 165 Conn. 152, 156, 328 A.2d 701 (1973). Accordingly, the town was entitled to notice of and an opportunity to be heard on the nature and scope of the injunction to be issued by the court. "[T]he failure of a court to comply with this requirement of notice is a serious breach of a fundamental requirement of due process of law." *Winick* v. *Winick,* 153 Conn. 294, 299, 216 A.2d 185 (1965). Additionally, it is implicit in the court's order that the parties be heard on the terms of the injunction itself.[6]

---

that "fair play" could justify remand to the trial court for a hearing on the injunction.

[6] It is also clear from a stipulation that the parties entered into before trial that such a hearing was envisioned. The agreement cited by the court stated that if liability were found, "a further hearing will be had as to damage." It is obvious from reading the court's order and the stipulation together that the intent of the parties was that such a hearing be held.

There is error in part, the judgment is set aside as to the nature and scope of the injunction and the case is remanded for a hearing on the nature and scope of the injunction to be issued.

In this opinion the other judges concurred.