GAYL CZAPLICKI *v.* CRAIG OGREN

FALCON MACHINE PRODUCTS, INC., ET AL. *v.*
CRAIG OGREN ET AL.
(AC 25037)

Foti, McLachlan and Hennessy, Js.

Argued December 1, 2004—officially released March 8, 2005

*Peter J. Boorman,* with whom was *Ronald P. Denault,* for the appellants-appellees (defendants).

*Joseph E. Milardo, Jr.,* with whom, on the brief, was *Linda J. Latimer,* for the appellees-appellants (plaintiffs).

*Opinion*

McLACHLAN, J. The defendants, Craig Ogren and OVL Manufacturing, Inc. (OVL), appeal, and the plaintiffs, Gayl Czaplicki, Philip Czaplicki and Falcon Machine Products, Inc. (Falcon), cross appeal following a consolidated trial to the court of two actions[1] arising out of a dispute over the parties' rights and obligations with respect to an industrial building in Berlin. The defendant claims that in *Czaplicki* v. *Ogren* (joint venture case), the trial court improperly rejected his counterclaim that alleged that Gayl Czaplicki breached the joint venture agreement and that in *Falcon Machine Products, Inc.* v. *Ogren* (lockout case), the court improperly found that the defendant violated General Statutes § 47a-43, the entry and detainer statute, and improperly awarded damages that were not supported by the evidence. The plaintiffs claim that, as to the joint venture case, the court awarded inadequate damages and, as to the lockout case, the court improperly refused to award attorney's fees pursuant to General Statutes §§ 47a-45a and 47a-46. We affirm the judgment in the

---

[1] Gayl Czaplicki is the plaintiff in what we refer to as the joint venture case, the first of the two cases at issue that were consolidated for trial. Philip Czaplicki and Falcon Machine Products, Inc., are the plaintiffs in what we refer to as the lockout case, the second of the two cases at issue.

Craig Ogren is the only defendant in the joint venture case, and he and the corporation of which he is a one-half owner, OVL Manufacturing, Inc., are the defendants in the lockout case. For simplicity and because Ogren is the driving force behind OVL Manufacturing, Inc., we refer to Ogren as the defendant throughout this opinion.

lockout case and reverse in part the judgment in the joint venture case.

## I

## BACKGROUND

The conflicts of interest inherent in the parties' business arrangements destined them for the litigation in which they are now embroiled. The background facts may be summarized as follows. Philip Czaplicki operated a manufacturing company, Falcon, which his wife, Gayl Czaplicki, owned and served as president. The defendant, along with Alfred Lassen, Jr., owned another manufacturing company, OVL. A building suitable to be shared by the two companies became available, which their owners agreed to purchase in 1993. Title to the building was conveyed to a joint venture, Cambridge Heights Realty Associates, created to hold the property for the benefit of the two companies. The joint venturers were Gayl Czaplicki, who owned a 50 percent share, the defendant, who owned a 25 percent share, and Susan V. Lassen, Alfred Lassen, Jr.'s wife, who also owned a 25 percent share. Thus, the interests of Falcon and OVL were equally represented, directly or indirectly, in the joint venture. The joint venture agreement called for the payment of the joint venture's debts and expenses to be made from Falcon's and OVL's rents, which the parties agreed would fluctuate to cover the joint venture's obligations. The defendant immediately became the de facto head of the joint venture, as Gayl Czaplicki and Susan Lassen did not participate to any significant extent in its day-to-day operations.[2]

Both Falcon and OVL had financial difficulty and failed at times to make payments to the joint venture, leading to frequent and acrimonious disputes among

---

[2] The electric bill was in Philip Czaplicki's name, and he took responsibility for collecting and paying OVL's share of the bill. The defendant collected Falcon's share and paid all other bills owed by the joint venture.

the parties. Specifically, disputes arose about the electric bill and the mortgage and real estate tax payments. The electric bill initially was to be divided equally between the two tenants. It was often paid late, which led the electric company to threaten termination and caused arguments between the defendant and Philip Czaplicki about the consumption of electricity attributable to each company. Real estate tax payments were similarly late, leading the town of Berlin to threaten foreclosure action. Alfred Lassen, Jr., eventually left OVL, and the Lassens declared bankruptcy.[3] To bring the joint venture's financial situation under control, the defendant sought, on his own, to refinance the joint venture's debt and to commit it to a specific payment schedule. He could not do so, however, because the rental payments owed by Falcon and his own company, OVL, were in arrears. To solve that problem, the defendant began, both personally and through OVL, to make payments toward the joint venture's mortgage, tax and electric debts. The defendant then demanded, pursuant to §§ 3.3[4] and 9.1[5] of the joint venture agreement, that

[3] The Lassens' share of the joint venture is currently held by the bankruptcy trustee.

[4] Section 3.3 of the joint venture agreement provides: "Additional Capital Contributions shall be made in the form of loans from Czaplicki, Ogren and Lassen to the Joint Venture in accordance with the terms and conditions in Section 3.5 below and paid to the Joint Venture as and when the Joint Venture requires."

Section 3.5 provides in relevant part: "In the event that a Joint Venturer . . . shall fail to provide an Additional Capital Contribution within fifteen (15) days after the same is due and payable, then any contributing Joint Venturer shall have the right to contribute such sum as shall be due from credit to its . . . Capital Account . . . ."

[5] Section 9.1 of the joint venture agreement provides in relevant part: "If any of the Joint Venturers . . . fails to perform any of its respective obligations hereunder, then the other Joint Venturers . . . shall have the right to give the Defaulting Joint Venturer a notice of default . . . . The Notice of Default shall set forth the nature of the obligation to which the Defaulting Joint Venturer has not performed. . . .

"(b) If such default is a failure to pay money, and if such sums of money . . . are not so paid within [a] ten (10) day period, the Nondefaulting Joint Venturer shall have the rights set forth in Section 9.1 (c), below.

Gayl Czaplicki contribute additional capital to ensure that the refinancing could occur. Gayl Czaplicki refused, claiming that the defendant had no authority unilaterally to bind the joint venture to his refinancing scheme and that she was not obligated personally to make payments owed by the tenant corporations. The defendant attempted to terminate the joint venture and to wind up its affairs. He also subleased part of OVL's half of the building to another company without the consent or knowledge of the other joint venturers. In August, 1999, the disputes came to a head when the defendant locked out of the building Philip Czaplicki and, consequently, Falcon. Philip Czaplicki and Falcon initiated the lockout case in the housing session of the Superior Court on December 15, 1999.[6] After trial, the court found in favor of the plaintiffs in the lockout case and awarded $15,000 in damages along with costs. The court also issued an injunction restoring Falcon to its rented area and all common areas in the building, and ordered the defendant and OVL to remove all of their materials from Falcon's areas of the building. The specific facts of the lockout case will be addressed in part II B.

Gayl Czaplicki initiated the joint venture case on June 11, 2002, alleging that the defendant had breached the joint venture agreement. The defendant filed a counterclaim, alleging that he had paid Gayl Czaplicki's share of the joint venture's expenses and seeking an order that she transfer her interest in the joint venture to him. The court found in favor of Gayl Czaplicki on both her claim and on the defendant's counterclaim. The court ordered the defendant to pay to the joint venture the

"(c) If any default is not cured as set forth . . . above, the Nondefaulting Joint Venturers shall have the right to terminate this Agreement . . . whereupon such default may be treated by the Nondefaulting Joint Venturers as a dissolution of the Joint Venture . . . ."

[6] Gayl Czaplicki was originally a plaintiff in the lockout case as well, but later withdrew. The operative amended complaint in the lockout case was filed on April 22, 2003.

rent and real estate tax payments that it would have received from the dispossessed Falcon between September 1, 1999, and December 31, 2002, and to cease and desist the liquidation of the joint venture until such time as the defendant provided the partners with a full accounting. Further facts will be provided as necessary to address the parties' specific claims on appeal.

## II

## THE DEFENDANT'S CLAIMS

### A

The defendant first claims that the court improperly rejected his counterclaim in the joint venture case. Specifically, he claims that the court should have found that Gayl Czaplicki breached the joint venture agreement by failing to contribute capital to the joint venture. We disagree.

We begin by setting forth our standard of review. "Whether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Citation omitted; internal quotation marks omitted.) *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 77 Conn. App. 462, 471–72, 823 A.2d 438 (2003).

The court found that Gayl Czaplicki was not obligated to contribute capital to the joint venture because the joint venture had not yet exhausted all remedies against

the two tenants, Falcon and OVL, which were late in paying their rent. In its memorandum of decision, the court stated: "[T]here is no showing that [a capital contribution] is needed or required. [The defendant] contends that no cash flow is available to the [joint venture]. There is evidence, however, that the two corporations are committed to pay rentals in the amount of the obligations of the joint venture. There is no evidence that any attempt has been made to collect on the past due debts owed to the joint venture, nor to enforce the rental payments by the [tenants]. These rentals were designed to fluctuate so as to consistently pay all of the joint venture's expenses and debts."

There was an adequate factual basis for the court to conclude as it did. The court found that the defendant, in his capacity as a joint venturer, did not attempt to collect rent from the tenant corporations, one of which he is a one-half owner. There is no question that both Falcon and OVL owed the joint venture back rent. Instead of attempting to collect those debts, however, the defendant demanded payment from Gayl Czaplicki in her capacity as a joint venturer and not in her capacity as president of Falcon. Until all efforts to collect rent from Falcon and OVL were exhausted, Gayl Czaplicki was not obligated to make a capital contribution. There was adequate evidence for the court to find that such efforts were not exhausted and, as such, the court's finding of fact was not clearly erroneous.

Furthermore, because we conclude that the court properly found that Gayl Czaplicki did not breach the joint venture agreement, we must also conclude that the court properly found that the defendant could not dissolve the joint venture on that ground.

B

The defendant next claims that, in the lockout case, the court improperly concluded that he violated § 47a-

43 (a),[7] the entry and detainer statute.[8] The defendant argues that Philip Czaplicki had access to the building, but did not choose to enter or to make use of the premises because Falcon had failed as a business. Whether the defendant prevented the plaintiffs from entering the building is a question for the trier of fact. Therefore, we apply the same clearly erroneous standard of review. *Colliers, Dow & Condon, Inc.* v. *Schwartz*, supra, 77 Conn. App. 471.

There was adequate evidence for the court to conclude that Philip Czaplicki and Falcon were locked out of the building in violation of § 47-43 (a) (2) through (4). Philip Czaplicki testified that, initially, in August, 1999, he was physically locked out of the building when the defendant changed the lock on the front door. Because of previous confrontations and threats by the defendant, the plaintiffs filed the lockout action and obtained a court order rather than discuss the lockout with the defendant. Even after the defendant received a court order, it took several months and intense negotiations before he gave Philip Czaplicki a key. During those negotiations, the defendant threatened both Philip Czaplicki and his attorney. Thereafter, Philip Czaplicki had physical access to the building, but not to the electrical control room, and the defendant used

---

[7] General Statutes § 47a-43 (a) provides in relevant part: "When any person . . . (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains [any land] with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."

[8] "The tenants' remedy for a lock-out, an illegal or self-help eviction by the landlord or others, is the remedy of entry and detainer." (Internal quotation marks omitted.) *Karantonis* v. *East Hartford*, 71 Conn. App. 859, 862, 804 A.2d 861, cert. denied, 261 Conn. 944, 808 A.2d 1137 (2002).

Falcon's side of the building for storage, leaving Falcon's machines inaccessible. The defendant controlled Falcon's access to electricity and would not allow Falcon to operate without first paying him. Without electricity, of course, Falcon could not operate its machines. On one occasion, Philip Czaplicki asked the defendant's subtenant for access to the electrical control room when the defendant was not present in the building. After only ten or fifteen minutes in the building, the subtenant told Philip Czaplicki to leave, indicating that the defendant had ordered the subtenant to keep him out of the building in the defendant's absence.

On the basis of this evidence and our review of the entire record, we conclude that the court's finding that the defendant excluded the plaintiffs from the building was not clearly erroneous. In fact, although the court did not specify which subdivisions of § 47a-43 (a) the defendant violated and the defendant did not seek an articulation, there is an adequate evidentiary basis for the court to have concluded that he violated subdivisions (2), (3) and (4), any one of which is adequate to support the court's judgment. The court reasonably could have found that the defendant used the threat of force in excluding the plaintiffs from the building and therefore violated subdivision (2). The court reasonably could have found that the defendant detained the plaintiffs' personal property in violation of subdivision (3). The court reasonably could have found that Philip Czaplicki would have had to commit a breach of the peace in order to enter the building or, later, the electric control room, in violation of subdivision (4). See footnote 7.

## C

The defendant last claims that the court's award of damages in the lockout case is inadequately supported by the evidence. We disagree. "As a general rule, the

determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Thus, we give substantial deference to the trial judge on the issue of damages." (Citations omitted; internal quotation marks omitted.) *Reader* v. *Cassarino*, 51 Conn. App. 292, 297, 721 A.2d 911 (1998).

The court awarded $15,000 as damages in the lockout case. The court did not give any explanation of its basis for the award, nor did the defendant seek an articulation. Gayl Czaplicki testified that Falcon was growing and had shown its first profit in 1998. She estimated that the lockout cost Falcon $30,000 in profits, offering as evidence work orders that were never completed and income tax returns. Philip Czaplicki also testified as to Falcon's growth prior to the lockout and indicated the loss in business it caused. That testimony forms an adequate basis for the court's award. Moreover, because the defendant chose not to file a motion for articulation to illuminate further the basis for the compensatory damages award, this court can only speculate as to how and why the trial court arrived at that sum. "We repeatedly have stated that it is the appellant's responsibility to provide an adequate record for review . . . . Thus, in light of the discretion afforded the trial court in determining the amount of damages to be awarded and in crediting or discrediting the testimony of witnesses"; (citation omitted; internal quotation marks omitted) *Smith* v. *Snyder*, 267 Conn. 456, 467, 839 A.2d 589 (2004); we conclude that the court's award of damages was not clearly erroneous.

### III

### THE PLAINTIFFS' CLAIMS

### A

The prevailing plaintiffs in the lockout case, Philip Czaplicki and Falcon, claim that the court improperly

failed to award them attorney's fees as "recoverable costs" pursuant to §§ 47a-45a (a) and 47a-46. That claim is without merit. The two statutory provisions the plaintiffs cite do not allow for an award of attorney's fees. "[W]hen the General Assembly want[s] to authorize the award of attorney's fees it kn[ows] how to do it." *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 533, 839 A.2d 1250 (2004). Because §§ 47a-45a (a) and 47a-46 are devoid of any express language authorizing an award of attorney's fees, we will not presume that the legislature intended those provisions to operate in derogation of our long-standing common-law rule disfavoring the award of attorney's fees to the prevailing party. See id.

B

The plaintiff in the joint venture case, Gayl Czaplicki, claims that the court did not award adequate damages by failing to include rents and real estate taxes that became payable to the joint venture during the course of the litigation. Although the determination of damages is a finding of fact that will not be overturned absent clear error; *Reader* v. *Cassarino*, supra, 51 Conn. App. 297; we conclude that Gayl Czaplicki has satisfied that difficult burden.

The court found that the defendant breached the joint venture by locking out Falcon, thus costing the joint venture Falcon's half of the mortgage and real estate tax payments. The court therefore awarded the joint venture "the lost rent which would have been received from Falcon . . . for the period September 1, 1999, through December 31, 2002, said rent being one-half of the monthly mortgage payments, or $477.77, in the total amount of $19,100.80, computed to December 31, 2002, as well as one-half of real estate taxes assessed on the grand lists of October 1, 1999, October 1, 2000, and October 1, 2001." The court, however, did not award

damages for 2003, during which Falcon remained locked out and did not pay its half of the rent and real estate taxes. The court rendered judgment on January 5, 2004, at which time the court found that the lockout was ongoing, as evidenced by its order restoring Falcon to the building and directing the defendant to remove his materials from Falcon's area.

The court's failure to compensate Gayl Czaplicki completely for the joint venture's harm is clear error. "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed." (Internal quotation marks omitted.) *Argentinis* v. *Gould*, 219 Conn. 151, 157, 592 A.2d 378 (1991). Here, the joint venture suffered harm through the date of the court's decision, but the court did not award damages for the final year of the harm. In order to place the joint venture in the same position it would have been in absent the defendant's breach, the court must award damages the plaintiff suffered during the final year of the breach during which the litigation was ongoing.

On cross appeal, the judgment in the joint venture case is reversed only as to the failure to award damages for losses incurred during the period of litigation and the case is remanded with direction to award the plaintiff, Gayl Czaplicki, damages incurred during 2003 for unpaid rent in the amount of $5733.24 and real estate taxes in the amount of one-half of the taxes assessed on the grand list of October 1, 2002. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.