DAVID R. WILCOX ET AL. *v.* DANIEL J.
FERRAINA ET AL.
(AC 26015)

Schaller, McLachlan and Harper, Js.

542

Argued September 18, 2006—officially released April 17, 2007

*Bruce G. MacDermid,* for the appellants (defendants).

*Jonathan M. Starble,* for the appellee (named plaintiff).

*Matthew K. Beatman,* receiver for the plaintiff American Crushing and Recycling, LLC.

*Opinion*

HARPER, J. In this entry and detainer action, the defendants, Daniel J. Ferraina and Thomas DeFranzo, brought this appeal challenging the trial court's judgment in favor of one of the plaintiffs,[1] David R. Wilcox. The defendants argue that the court improperly found that Wilcox was in actual possession of the property at issue within the meaning of the entry and detainer statute, General Statutes § 47a-43.[2] In addition, the defendants dispute the court's finding that they dispossessed Wilcox "with force and strong hand" in violation of § 47a-43. We disagree with both of the defendants' claims, and therefore affirm the judgment of the trial court.

The following facts are relevant to the defendants' appeal. Wilcox is the owner and managing member

[1] The defendants have withdrawn their appeal from the judgment in favor of the other plaintiff, American Crushing and Recycling, LLC (American Crushing). Nevertheless, all references to the plaintiffs are to David R. Wilcox and American Crushing.

[2] General Statutes § 47a-43 (a) provides in relevant part: "When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."

of the plaintiff American Crushing and Recycling, LLC (American Crushing), a construction company. Ferraina is the owner of a parcel of land located in Windsor (property).

On January 13, 2004, Wilcox and Ferraina entered into an agreement in which Wilcox paid Ferraina $100,000 for "the exclusive right" to excavate and to remove earthen material from the property, to screen topsoil on the property and to fill and to grade its north slope with clean fill. The agreement also gave Wilcox the right to bring onto the property all equipment that would be "necessary or useful" to accomplish those tasks. Furthermore, a clause in the agreement permitted Wilcox to nominate any entity to exercise his rights under the agreement. Pursuant to that clause, Wilcox nominated American Crushing.

Beginning in April, 2004, the plaintiffs moved large equipment such as excavators, trucks and payloaders onto the property and commenced operations. By its terms, the agreement commenced on April 15, 2004, and remained effective until the material was removed "to an elevation of 158 feet" or December 31, 2005, whichever occurred first.

On August 3, 2004, the plaintiffs instituted this entry and detainer action against the defendants pursuant to § 47a-43. The verified complaint and application for temporary injunction alleged that beginning on July 10, 2004, the defendants unlawfully had blocked the plaintiffs' entrance to the property and taken possession of the plaintiffs' construction equipment and saleable products. The plaintiffs further alleged that the defendants had used the plaintiffs' equipment and products without their permission and informed their customers that the property was not open for business, thereby interfering with the plaintiffs' business relationships.

The court held two hearings before issuing a memorandum of decision on November 3, 2004. The court found that, on July 10, 2004, DeFranzo used two pickup trucks to bar the plaintiffs' ingress and egress from the property and called the police when the plaintiffs protested. The court also found that, in taking those measures, DeFranzo acted both in his individual capacity and as Ferraina's agent.

The court further found that a few days after the incident on July 10, 2004, Ferraina constructed a berm of sand across the entrance to the property from Old Iron Ore Road. Because of the plaintiffs' need to move heavy trucks onto the property, the court noted, Old Iron Ore Road was the plaintiffs' only practical means of accessing the property.

On the basis of those findings, the court concluded that the plaintiffs were in actual possession of the property within the meaning of § 47a-43 and that the defendants dispossessed them "with force and strong hand."[3] Accordingly, the court rendered judgment in favor of the plaintiffs and issued an injunction "prohibiting the defendants from blocking the plaintiffs' entry or exit from the subject site." The defendants promptly filed this appeal.

Thereafter, on June 6, 2005, the plaintiffs filed a request for leave to amend their complaint to include a claim for monetary damages and a request for "double damages" under General Statutes § 47a-46.[4] As the

---

[3] Although the court did not specify which subdivision of § 47a-43 (a) the defendants violated by taking the aforementioned acts, it appears that the court relied on subdivision (2), as it is the only part of the statute that explicitly requires dispossession "with force and strong hand . . . ."

[4] General Statutes § 47a-46 provides: "The party aggrieved may recover in a civil action double damages and his costs against the defendant, if it is found on the trial of a complaint brought under section 47a-43 that he entered into the land, tenement or dwelling unit by force or after entry held the same by force or otherwise injured the party aggrieved in the manner described in section 47a-43."

defendants did not file a timely objection to the request, the complaint was amended automatically in accordance with the provisions of Practice Book § 10-60 (a).[5] The plaintiffs later filed a demand for a jury trial on the damages claim, which is still pending before the trial court.[6]

## I

Before reaching the merits of the defendants' appeal, we first must determine whether the case has been

[5] Practice Book § 10-60 (a) provides in relevant part: "Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section . . .

"(3) [b]y filing a request for leave to file such amendment, with the amendment appended, after service upon each party . . . . If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. . . ."

[6] This appeal from the court's injunction order while the damages claim is still pending raises a concern about whether the defendants are appealing from a "final judgment" within the meaning of Practice Book § 61-1. We conclude that they are.

"Ordinarily, when a judgment as to liability has been entered but damages have not been determined, there is no appealable final judgment." *Glasson* v. *Portland*, 6 Conn. App. 229, 231 n.3, 504 A.2d 550 (1986). In *Ricci* v. *Naples*, 108 Conn. 19, 22, 142 A. 452 (1928), however, our Supreme Court stated that a judgment is a "final judgment" as long as "all the issues were determined, except the amount of damages, and the court rendered a judgment after fully hearing the parties." Applying that principle in a later case, our Supreme Court held that a judgment ordering indemnification was a "final judgment" even though the specific amount of damages had not yet been determined. *Walton* v. *New Hartford*, 223 Conn. 155, 162 n.9, 612 A.2d 1153 (1992). Furthermore, this court has held that a final judgment existed where an injunction conclusively determined the party's rights, notwithstanding the fact that the trial court had not yet held a hearing in damages. See *Glasson* v. *Portland*, supra, 231 n.3.

In this case, the court found that the defendants committed an unlawful entry and detainer and granted the plaintiffs the permanent injunctive relief they originally requested in their complaint. Consequently, the court's judgment disposed of all pending causes of action and left only the issue of damages for resolution in a future proceeding. Under these circumstances, we hold that the defendants are appealing from a final judgment and that, accordingly, we may consider the merits of the appeal.

rendered moot by events that have occurred since the issuance of the final judgment.

The following additional facts are necessary to our consideration of this issue. The defendants filed this appeal on November 22, 2004, and the case was originally scheduled for argument in October, 2005. In the interim, the plaintiffs filed a motion to terminate the stay of execution pursuant to Practice Book § 61-11 (d), which the court granted on January 5, 2005.

Prior to argument before this court, however, on July 29, 2005, one of American Crushing's trucks was involved in an accident that resulted in the death of four people and the injury of several others. Later, a wrongful death action was filed against the company, leading to its eventual placement in receivership.

Since then, virtually all of American Crushing's vehicles, equipment and other assets have been liquidated, and American Crushing has ceased all business operations. By agreement between the parties, American Crushing has withdrawn its portion of the complaint, and the defendants have withdrawn the part of their appeal relating to American Crushing.

Given these recent developments and the expiration of the original agreement on December 31, 2005, we questioned whether this appeal should be dismissed as moot. Accordingly, we ordered all involved parties to submit supplemental briefs to this court addressing this issue.

"Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . .

[T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *Smith-Lawler* v. *Lawler*, 97 Conn. App. 376, 378–79, 904 A.2d 1235 (2006).

The defendants concede that the appeal has become moot as to any claims relating solely to American Crushing. They contend, however, that the appeal is not completely moot due to Wilcox' assertion of an individual claim for damages. The continuation of this appeal, the defendants argue, would "underscore that the damage claims of Mr. Wilcox are without merit," and "preclude any future concocted damages claims . . . ."

The expiration of the parties' agreement on December 31, 2005, eviscerated the court's earlier order of injunctive relief. Therefore, to the extent that the plaintiffs originally sought injunctive relief, including restoration to the premises, the case indeed has become moot. Similarly, even if the court improperly enjoined the defendants from "blocking the plaintiffs' entry or exit from the subject site," we no longer could offer any practical relief because of the termination of the plaintiffs' contractual right to enter onto the property.

Our Supreme Court, however, has allowed us to retain jurisdiction "where the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, even though developments during the pendency of the appeal would otherwise render it moot." *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 439 n.3, 685 A.2d 670 (1996). After conducting a careful review of the record, we conclude that the

case is not moot because of the prejudicial collateral consequences that could befall the defendants if we failed to address the merits of this appeal. Specifically, the validity of the earlier finding of unlawful entry and detainer will govern the disposition of the damages claim currently pending before the trial court. If the court's finding of liability was ill-founded, as the defendants maintain, then there would be no basis in law for awarding damages to Wilcox.

Given that meaningful, practical consequences could result from our resolution of the claims relating to Wilcox, we conclude that the appeal is not moot. Having reached that conclusion, we now turn to the merits of the defendants' appeal.

## II

The defendants claim that the court improperly found that Wilcox was in actual possession of the property within the meaning of the forcible entry and detainer statute. They also challenge the court's finding of dispossession "with force and strong hand."

"The process of forcible entry and detainer, provided by our statutes, is in its nature an action by which one in the possession and enjoyment of any land, tenement or dwelling unit, and who has been forcibly deprived of it, may be restored to the possession and enjoyment of that property. This process is for the purpose of restoring one to a possession which has been kept from him by force. . . . For a plaintiff to prevail, it must be shown that he was in actual possession at the time of the defendant's entry." (Citation omitted.) *Berlingo* v. *Sterling Ocean House, Inc.*, 203 Conn. 103, 108, 523 A.2d 888 (1987).

We begin with the legal standard governing our review of both of the defendants' claims. "Our review of questions of fact is limited to the determination of

whether the findings were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, 62 Conn. App. 517, 520–21, 772 A.2d 154, cert. denied, 256 Conn. 916, 773 A.2d 945 (2001).

A

The defendants first claim that the court's finding that Wilcox actually possessed the property was clearly erroneous. Their argument is twofold. First, the defendants allege that the agreement afforded Wilcox a license to use the property but not a possessory interest in the property. Second, the defendants contend that the record is devoid of evidence supporting the court's finding that Wilcox exercised "dominion and control" over the property within the meaning of § 47a-43. We find neither argument persuasive.

"A plaintiff suing under the forcible entry and detainer statute must prove his *actual* possession of the land or property from which he claims to have been dispossessed. . . . The question of whether the plaintiff was in actual possession at the time of the defendant's entry is one for the trier of fact. . . . Generally, the inquiry is whether the individual has exercised the dominion and control that owners of like property usually exercise. . . . [I]t is not necessary that there be a continuous personal presence on the land by the person

maintaining the action. There, however, must be exercised at least some actual physical control, with the intent and apparent purpose of asserting dominion." (Citations omitted; emphasis in original.) *Communiter Break Co.* v. *Scinto*, 196 Conn. 390, 393–94, 493 A.2d 182 (1985).

The defendants first argue that the agreement constituted a license rather than a lease. The agreement's categorization as a license is significant, the defendants contend, because licensees, unlike lessees, do not acquire any possessory interest in the property. The defendants further reason that without a possessory interest in the property, Wilcox could not have had actual possession of the property as required under § 47a-43.

Even if we assume arguendo that Wilcox had a license and thereby lacked any possessory interest in the property, we fail to see how that fact pertains to the "actual possession" inquiry that is the touchstone of entry and detainer law. Many who have no right of possession to land or property are nonetheless in "actual possession" within the meaning of § 47a-43. A prime example would be a squatter in an apartment building; see *Fleming* v. *Bridgeport*, 92 Conn. App. 400, 886 A.2d 1220 (2005), cert. granted, 277 Conn. 922, 895 A.2d 795 (2006);[7] or a person currently "in the actual, hostile, notorious and continuous possession" of land. (Internal quotation marks omitted.) *Orentlicherman* v. *Matarese*, 99 Conn. 122, 125, 121 A. 275 (1923). In both circumstances, the party seeking relief under the entry and detainer statute

---

[7] The Supreme Court granted the plaintiff's certification for appeal, limited to the following two questions: "1. Did the Appellate Court properly conclude that the private defendants did not violate the entry and detainer statute? 2. Did the Appellate Court properly conclude that the police defendants are immune from liability for their action in removing the named plaintiff from an apartment where she was in actual possession?" *Fleming* v. *Bridgeport*, 277 Conn. 922, 895 A.2d 795 (2006).

lacked a legally cognizable possessory interest in the property, at least vis-a-vis its real owner. Yet, neither party was precluded from recovering under § 47a-43 for failure to satisfy the standard of "actual possession."

Furthermore, our Supreme Court implicitly has rejected the defendants' approach by permitting trespassers to recover under the entry and detainer statute. In *Orentlicherman* v. *Matarese*, supra, 99 Conn. 122, decided more than eighty years ago, the plaintiff's immediate predecessor in title annexed seventeen to twenty feet of the defendant's land by moving a boundary fence. Id., 124. When the defendant dug holes and stuck posts in the plaintiff's land in an attempt to reestablish the original boundary line, the plaintiff sued, alleging unlawful entry and detainer. Id., 125.

Despite the plaintiff's status as a trespasser, our Supreme Court did not hesitate to remand the case to the trial court with direction to render judgment in his favor upon determining that he had been "in actual, peaceable possession," and that "the defendant made an entry on [the] land with force and with the purpose to dispossess with a strong hand . . . ." Id. In so holding, the court emphasized that "[t]his statute was made to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means." Id., 126.

An examination of the goals underlying the entry and detainer statute further emphasizes the reasons why actual possession, rather than right of possession, must remain the ultimate inquiry. The statute was intended to prevent "the employment of force against a peaceable party"; (internal quotation marks omitted) id., 126–27; and more fundamentally, the temptation for one to "[make] himself judge in his own cause, and [enforce] his own judgment." (Internal quotation marks omitted.) Id., 126. Were such behavior allowed, "a breach of the

public peace would be invited, and any wrong, if redressed at all, would be redressed at the cost of a public disturbance, and perhaps of serious bodily injury to the parties." (Internal quotation marks omitted.) Id., 127. The defendants' argument, therefore, is contrary to long-standing Connecticut law on entry and detainer.

Nor are we persuaded by the defendants' argument that the court's finding of actual possession is clearly erroneous because Wilcox did not exercise a sufficient degree of dominion and control over the property. The evidence before the court included Wilcox' physical presence on the property five or six days a week for approximately ten hours per day, the housing of Wilcox' excavation equipment on the property for "several years" and Wilcox' construction of three roads and an antitracking pad on the property. In addition, Ferraina testified that Wilcox had been running a topsoil screening business from the property for one year prior to July 10, 2004, and that Wilcox had told "many people" that he owned the property. All of this evidence, in the aggregate, is more than sufficient to sustain the court's finding that Wilcox exercised "dominion and control" over the property.

The defendants cite *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, supra, 62 Conn. App. 517, which, they allege, presented facts similar to those in this case. They further contend in their brief that "[o]n the basis of similar facts, the court in *Murphy, Inc.*, determined that the plaintiff was not in possession of the premises."

*Murphy, Inc.*, involved an agreement in which the plaintiff leased two signs and attendant supporting structures on the roof of a building. See id., 518. On appeal, this court reversed the trial court's finding of actual possession because it concluded that the record was devoid of evidence suggesting that the plaintiff

exhibited any amount of physical control over the premises. Id., 522.

In so holding, we pointed out that the plaintiff did not have a set of keys to either the building itself or the gate in the fence that surrounded the building. Id., 521. Without a personal set of keys to either the building or the gate, the plaintiff's access to the roof was severely restricted. Id. We further observed that, during the five year duration of the agreement, the plaintiff was on the premises only every other month for approximately fifteen minutes to three hours. Id. Finally, we noted that, although the plaintiff parked its vehicles on the property during visits, the vehicles were never left on the property overnight. Id.

Despite the defendants' assertions, it is clear that the facts relied on in *Murphy, Inc.*, are quite distinguishable from those present in this case. Here, Wilcox had access to the property at all times. Indeed, as mentioned previously, the testimony indicated that Wilcox actually was present on the property five to six days per week for approximately ten hours a day. The record also shows that Wilcox regularly left excavation vehicles and equipment on the property overnight.

Ultimately, despite the defendants' various arguments to the contrary, we conclude that there was sufficient evidence presented at the hearings from which the court could find that Wilcox had "actual possession" of the property immediately prior to July 10, 2004. As a result, we cannot say that the court's findings on this issue were clearly erroneous.

## B

The defendants next claim that the facts in the record do not support the court's finding that they dispossessed Wilcox "with force and strong hand." We disagree.

Our Supreme Court has described "strong hand" as encompassing the employment of "an unusual number of people, with weapons, with menaces,—or accompanied with some circumstances of actual violence, calculated to intimidate the plaintiff, and deter him from asserting or maintaining his rights." (Internal quotation marks omitted.) *Hartford Realization Co.* v. *Travelers Ins. Co.*, 117 Conn. 218, 224–25, 167 A. 728 (1933). The court has further cautioned that "[a]n entry which has no other force than such as implied by law in every trespass, is not a forcible entry within the meaning of the statute. . . . To make a detainer forcible, the same kind and degree of force, or indications of violent designs, must be exhibited." (Internal quotation marks omitted.) Id., 225.

In support of their argument that "force and strong hand" are absent here, the defendants refer to several transcript excerpts from the trial court hearings in which Wilcox allegedly admitted that he was not prevented from gaining access to the property. The defendants further remind us that "[they] have denied that they prevented [Wilcox] from entering upon the [p]roperty (for activities permitted under the [a]greement)." Finally, the defendants state in their brief that "by Mr. Wilcox's own testimony, there is nothing left to be removed from the site other than his equipment, which Mr. Ferraina has acknowledged may be removed . . . at any time."

We decline the defendants' invitation to reweigh the evidence. "Once again, this court is compelled to state, what has become a tired refrain, we do not retry the facts or evaluate the credibility of witnesses." *Bowman* v. *Williams*, 5 Conn. App. 235, 238, 497 A.2d 1015 (1985), appeal dismissed, 201 Conn. 366, 516 A.2d 1351 (1986), and cases cited therein. Furthermore, our review of the record confirms that there was ample evidence to support the court's finding that the defendants, with

force and strong hand, dispossessed Wilcox of the property.

First, the evidence in the record supports the court's finding that, on July 10, 2004, DeFranzo obstructed Wilcox' means of ingress and egress by placing his trucks across the road. DeFranzo admitted in his testimony that he called the police when his obstruction of the road precipitated a threatened physical confrontation between himself and Wilcox.

Ferraina acknowledged in his testimony that he constructed a sand berm across the road the plaintiffs had been using to access the property. This court has previously upheld a finding of dispossession where the defendant built a physical barrier to prevent entry onto the property. See *Evans* v. *Weissberg*, 87 Conn. App. 180, 866 A.2d 667 (2005) (plaintiff dispossessed by erection of fence). Furthermore, the evidence concerning the property's topological and geographical layout supports the court's finding that the road thus obstructed was "the only practical access the plaintiff had to the property."[8] Wilcox testified that there were no other means for him to access the property and explained why there were no other viable alternative routes. Given this evidence, we cannot say that the court's finding that the defendants dispossessed Wilcox with force and strong hand was clearly erroneous.

The judgment is affirmed.

In this opinion McLACHLAN, J., concurred.

SCHALLER, J., dissenting. The majority upholds the trial court's decision that the plaintiff David R. Wilcox proved his cause of action on the basis of a violation

---

[8] During oral argument before this court, the parties mentioned that they took the trial judge on a tour of the property. In its memorandum of decision, however, the court made no reference to his visit to the property.

of the entry and detainer statute, General Statutes § 47a-43. On appeal, the defendants, Daniel J. Ferraina and Thomas DeFranzo, challenge the court's ruling as to both the "actual possession" and the "forcible entry" elements of the statute. I respectfully disagree with the result on the basis of my reading of the controlling case law on actual possession. The decisions of our Supreme Court and this court persuade me that the plaintiff, as a licensee of the property in question, was not in actual possession at the time the defendants prevented his entry. As a result, I would conclude that the plaintiff could not properly maintain an action for forcible entry and detainer against the defendants and would reverse the judgment of the trial court.

At the outset, I would note that the cause of action for entry and detainer is a creature of statute and is in derogation of the well established common-law rule that inherent in ownership is the right to exclude others. See W. Blackstone, Commentaries, bk. 2, ch. 1. The statute, therefore, must be narrowly construed and strictly followed. See *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001) ("[i]n determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope" [internal quotation marks omitted]).

Next, I would call attention to the facts, as found by the trial court, on the issue of actual possession. On this important issue, the court made a finding as to the terms of the agreement, namely, that the plaintiff had the right during the term to enter the property to excavate and to remove material, to place necessary equipment, to screen topsoil, and to fill and to grade. The court also found that the plaintiff moved various items of large equipment onto the property and began the topsoil and gravel operation. Concerning possession,

the court's sole finding was that the "plaintiff had *a presence on the property pursuant to the agreement* between the parties. The [plaintiff] had [his] equipment on the property and [was] engaged in the business of removing sand and conducting the business of removing topsoil." (Emphasis added.) On the basis of that limited finding, the court concluded that the statutory requirement of actual possession was met.

Although the court did not characterize the agreement between the parties as a license, such a determination is implicit in its findings as to the terms of the agreement granting the plaintiff certain limited rights in the property. As we previously have stated, "[a] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property. . . . [It] does not convey a possessory interest in land . . . ." (Internal quotation marks omitted.) *Murphy, Inc.* v. *Remodeling, Etc., Inc.,* 62 Conn. App. 517, 522, 772 A.2d 154, cert. denied, 256 Conn. 916, 773 A.2d 945 (2001). Furthermore, in stating that the plaintiff "had a presence on the property pursuant to the agreement," the trial court implicitly connected the issue of possession with the legal basis for occupancy.

The defendants challenge the court's finding that the plaintiff was in actual possession of the property on two grounds. They argue, first, that the agreement is relevant in determining the nature and level of possession as it conveyed a license to the premises and not a possessory interest. The majority rejects this argument, despite the fact that the trial court tied the "presence" of the plaintiff to the nature of the agreement between the parties. The majority relies on *Orentlicherman* v. *Matarese,* 99 Conn. 122, 121 A. 275 (1923), a 1923 case with language purporting to indicate that even people without any legal right to be on the property, i.e., trespassers, are protected. The majority reasons that the

legal nature of the possession and the documents authorizing it are not relevant to the inquiry.

The defendants argue, second, that the evidence did not support a finding of sufficient "dominion and control" by the plaintiff, given the limited and specific activities that the plaintiff was permitted to and did conduct on the property. The majority rejects this argument on the basis of analogous case law despite the trial court's finding that the "plaintiff had a presence on the property . . . ."

The parties, the trial court and the majority have cited and discussed all the relevant appellate case law that governs this somewhat infrequently used statute. See *Berlingo* v. *Sterling Ocean House, Inc.*, 203 Conn. 103, 523 A.2d 888 (1987); *Communiter Break Co.* v. *Scinto*, 196 Conn. 390, 493 A.2d 182 (1985); *Orentlicherman* v. *Matarese*, supra, 99 Conn. 122; *Fleming* v. *Bridgeport*, 92 Conn. App. 400, 886 A.2d 1220 (2005), cert. granted on other grounds, 277 Conn. 922, 895 A.2d 795 (2006); *Czaplicki* v. *Ogren*, 87 Conn. App. 779, 868 A.2d 61 (2005); *Evans* v. *Weissberg*, 87 Conn. App. 180, 866 A.2d 667 (2005); *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, supra, 62 Conn. App. 517; *Catropa* v. *Bargas*, 17 Conn. App. 285, 551 A.2d 1282, cert. denied, 210 Conn. 811, 556 A.2d 609 (1989). I agree with the majority's succinct summary of the case law as follows: "A plaintiff suing under the forcible entry and detainer statute must prove his *actual* possession of the land or property from which he claims to have been dispossessed. . . . The question of whether the plaintiff was in actual possession at the time of the defendant's entry is one for the trier of fact. . . . Generally, the inquiry is whether the individual has exercised the dominion and control that owners of like property usually exercise. . . . [I]t is not necessary that there be a continuous personal presence on the land by the person maintaining the action. There,

however, must be exercised at least some actual physical control, with the intent and apparent purpose of asserting dominion." (Citations omitted; emphasis in original.) *Communiter Break Co.* v. *Scinto*, supra, 393–94. I would also note that "[t]he purpose of the Connecticut entry and detainer statute . . . which is part of the Landlord and Tenant Act, General Statutes § 47a-1 et seq., is to prohibit a property owner from entering his or her property in the act of taking possession thereof from one not legally entitled to such possession but who, nonetheless, maintains actual possession of such property." (Internal quotation marks omitted.) *Karantonis* v. *East Hartford*, 71 Conn. App. 859, 861, 804 A.2d 861, cert. denied, 261 Conn. 944, 808 A.2d 1137 (2002). The statute is primarily designed as a "tenants' remedy for a lock-out, an illegal or self-help eviction by the landlord or others . . . ." (Internal quotation marks omitted.) Id., 862.

A close examination of the facts of the relevant cases persuades me that the plaintiff, as a licensee, did not meet the statutory standard of actual possession necessary to maintain an action for forcible entry and detainer. An analysis of the case law reveals that, in determining actual possession, the appellate courts of this state have relied on either a possessory interest or possession in a manner similar to that of like owners through the exercise of dominion and control. Actual possession is most obviously found in cases in which there is a possessory interest. In *Czaplicki* v. *Ogren*, supra, 87 Conn. App. 782, 786–87, an entry and detainer case involving a lockout complaint, title to a shared building was held by a joint venture for the benefit of both parties. The court implicitly found actual possession in addressing whether there had been a violation of the entry and detainer statute. Id., 786–87. Similarly, in *Orentlicherman* v. *Matarese*, supra, 99 Conn. 124–25, the plaintiff had obtained a possessory interest in the

subject property through adverse possession. The trial court specifically found that the plaintiff and his predecessor had been in "actual, hostile, notorious and continuous possession" of the property. (Internal quotation marks omitted.) Id., 125. Thus, the majority's reliance on this case for the proposition that those with no right of possession nevertheless have been found to be in actual possession is misplaced. Although our Supreme Court mentioned in dicta that the purpose of the statute was "to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means," the touchstone of the court's decision was indeed possession. Id., 126. Also, in *Communiter Break Co.* v. *Scinto*, supra, 196 Conn. 394, the fact that the plaintiff held a lease to the subject property supported a finding of actual possession. By contrast, in *Berlingo* v. *Sterling Ocean House, Inc.*, supra, 203 Conn. 107–109, our Supreme Court reversed a decision by this court upholding the application of the entry and detainer statute, reasoning that the plaintiff did not have a right to possession because his lease already had terminated at the time of the defendant's entry. Similarly, in *Catropa* v. *Bargas*, supra, 17 Conn. App. 287, 290, we concluded that the plaintiff who had operated a golf pro shop in his employer's clubhouse as part of an at-will employment agreement did not have the requisite possessory interest in the shop to maintain an action for forcible entry and detainer once his employment had terminated. Specifically, we reasoned that the plaintiff had not leased the premises and that his rights in the premises were incidental to his employment agreement. Id., 290.

As indicated, actual possession also can be based on a determination of sufficient dominion and control over the subject property such that the use of the property is similar to that of a like owner. See *Communiter*

*Break Co.* v. *Scinto*, supra, 196 Conn. 394. In *Communiter Break Co.*, the finding of actual possession also was upheld following a determination that the plaintiff had exercised a sufficient degree of dominion and control over two forty-eight square foot areas that he leased in the Bridgeport train station and the Bridgeport bus terminal for the operation of public video game machines. Id., 392, 394. Our Supreme Court concluded that a finding of sufficient dominion and control was supported by evidence that the plaintiff had built wooden enclosures around the machines, had installed a roll-down security gate at one of the locations and had placed a sign at another. Id., 394. Similarly, in *Evans* v. *Weissberg*, supra, 87 Conn. App. 183, we upheld a finding of actual possession on the basis of evidence establishing that the plaintiff had exercised the dominion and control of owners of like property, including evidence as to her use and maintenance of the property as well as her belief that the disputed strip of land was part of her property. In *Fleming* v. *Bridgeport*, supra, 92 Conn. App. 405, we concluded that the trial court's failure to find actual possession was clearly erroneous. In that case, the plaintiff remained in her father's apartment after he had moved out without the landlords' permission. Id., 403. We determined that "[a]lthough the plaintiff was an illegal possessor, she nonetheless was in actual possession . . . ." Id., 405. In *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, supra, 62 Conn. App. 521–22, however, we determined that the plaintiff, who had a limited presence on and no physical control over the subject property, could not be said to have been in actual possession. The plaintiff was granted limited use of a building for the purposes of maintaining two advertising signs on its roof. Id., 518–19. The plaintiff, however, did not have keys to the premises or to the surrounding locked gate and, therefore, relied on the defendant in order to gain access to the premises. Id.,

521. We concluded that there was no evidence that the plaintiff exercised any physical control over the premises and, therefore, could not be found to have been in actual possession. Id., 522.

When I apply the case law to the facts of the present case as found by the trial court, it becomes clear that the resolution of this entry and detainer action turns on the fact that the license agreement provided the legal basis for the plaintiff's occupancy of the property. The plaintiff's rights in the property pursuant to the agreement were specifically limited to those activities necessary for the excavation, filling and screening operations conducted on the property; the plaintiff did not have a possessory interest in the property. The present case is therefore distinguishable from the existing precedent in which actual possession was found as a result of a possessory interest. See *Communiter Break Co. v. Scinto*, supra, 196 Conn. 394; *Orentlicherman v. Matarese*, supra, 99 Conn. 125; *Czaplicki v. Ogren*, supra, 87 Conn. App. 782, 787.

Having concluded that the plaintiff lacked a possessory interest in the property, I now turn to the question of dominion and control. The majority upholds the court's finding that the plaintiff exercised dominion and control over the property, reasoning that the evidence as to the plaintiff's presence on the property was more than sufficient to support such a finding. Such evidence included the plaintiff's physical presence on the property five or six days a week for approximately ten hours per day, the housing of equipment on the property for several years, the construction of roads and an anti-tracking pad on the property, as well as evidence that the plaintiff had conducted a topsoil screening business from the property and had told many people that he owned the property. In my view, the plaintiff's presence on the property as established by this evidence is consistent with the plaintiff's limited purpose in being on the

property pursuant to the agreement. As in *Catropa*, in which the plaintiff's right to use the premises for the operation of a pro golf shop was determined to be incidental to his employment agreement, the plaintiff's rights with respect to the property in this case were also *incidental to* the license agreement and the purposes of excavation. In fact, testimony provided at trial suggests that the plaintiff exercised a limited physical control over the premises. The plaintiff acknowledged that there were other parties present and that there were areas of the property that he was not allowed to enter.

In upholding the trial court's finding as to dominion and control, the majority distinguishes the present case from *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, supra, 62 Conn. App. 518, 522, in which we reversed a finding of actual possession, concluding that there was no evidence that the plaintiff exercised *any* physical control over the premises. The majority reasons that evidence as to the plaintiff's presence on the property indicated a higher level of access to the property and therefore supported the trial court's finding of dominion and control. Although the facts in the present case suggest a stronger degree of physical control over the property than those in *Murphy, Inc.*, the question of whether the plaintiff exercised sufficient dominion and control over the premises must be answered in light of the agreement, which provided the legal basis for occupancy. The plaintiff's activities on the property were tied to the license agreement that granted him limited rights in the property for a limited term. Furthermore, the trial court found that the plaintiff's activities on the property conformed to those set forth in the agreement. The plaintiff's engagement in specifically authorized activities on the property certainly does not constitute the same use of the property that an owner would enjoy. Notably, the facts of the present case are distinguishable from those in *Fleming* v. *Bridgeport*, supra, 92

Conn. App. 405, in which actual possession was apparently based on a determination that the plaintiff, while not a tenant, occupied the apartment as a true tenant with the right to use and enjoyment of the premises. Such ownership-like occupancy is clearly lacking from the present case. As a result, I conclude that the plaintiff's activities on the property do not support a finding of dominion and control.

For the foregoing reasons, I would conclude that the plaintiff, as a licensee, was not in actual possession because he lacked a possessory interest in and dominion and control over the property. As a consequence, I would further conclude that § 47a-43 is inapplicable to the circumstances of the present case. I would therefore reverse the judgment of the trial court.

I respectfully dissent.