# KRYSTOPHER ROMANCZAK ET AL. *v.* AVALONBAY COMMUNITIES, INC.
## (AC 30623)

Flynn, C. J., and Lavine and Borden, Js.*

Argued January 7—officially released July 13, 2010

*Robert W. Lynch*, for the appellants (plaintiffs).

*Ralph S. Keen III*, for the appellee (defendant).

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

LAVINE, J. This appeal involves a dispute between a landlord and two of its tenants over the landlord's withholding certain legal fees from the tenants' security deposit. The plaintiffs, Krystopher Romanczak and Bryan Dumelin, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, AvalonBay Communities, Inc. On appeal, the plaintiffs claim that the court improperly determined that they were in breach of the subject lease and not entitled to recover the legal fees the defendant had deducted from their security deposit.[1] We affirm the judgment of the trial court.

In June, 2006, the plaintiffs served the defendant with a three count complaint alleging breach of contract, vexatious litigation and violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act. Only the breach of contract count is at issue on appeal. Count one of the first amended complaint alleged the following facts, which are not in dispute. The plaintiffs and the defendant entered into a written lease agreement for a one year term from August 9, 2004, until August 8, 2005, for premises at 28102 Town Walk Drive in Hamden. The complaint also alleged that the lease is a consumer contract pursuant to General Statutes § 42-151 (b).[2] Moreover, it was alleged that on April 11, 2005, the defendant caused a notice to quit to be served on the plaintiffs, and on April 20, 2005, the defendant brought a summary process action against the plaintiffs. In their answer to the summary process

---

[1] Although in their appellate brief the plaintiffs claimed that the court improperly determined that they had breached the lease, during oral argument before us, counsel for the plaintiffs represented that the plaintiffs were pursuing only their claim regarding legal fees.

[2] General Statutes § 42-151 (b) provides in relevant part: "A written agreement is a 'consumer contract,' if: (1) A consumer enters into the agreement primarily for personal, family or household purposes . . . ."

complaint, the plaintiffs alleged that they had cured their nonpayment within the time permitted under the defendant's rent policy. The defendant prosecuted the summary process action until June 21, 2005, when it withdrew the action. The plaintiffs vacated the premises prior to the end of the lease term.

The complaint also alleged that "[a]fter the [p]laintiffs vacated the [p]remises, the [d]efendant improperly and unlawfully deducted $1,637.00 from the [p]laintiff[s'] security deposit for the cost and expense of the eviction action brought by the [d]efendant against the [p]laintiff[s]." The plaintiffs claimed that the deduction for the cost and expense of the summary process action was wrongful. Moreover, the plaintiffs claimed that "[p]ursuant to the terms of the [l]ease, the [d]efendant is entitled to attorney's fees and court costs incurred in enforcing its rights under the [l]ease pursuant to [General Statutes] § 42-150bb[3] which provides that if a consumer lease provides for the commercial party to recover its attorney's fees, the consumer shall be awarded an attorney's fee as a matter of law if the consumer successfully prosecutes or defends an action based upon the consumer lease." The plaintiffs claimed that they successfully had defended the summary process action and were entitled to attorney's fees in the amount of $1000, which they incurred to defend the action. The plaintiffs also claimed that they were entitled to recover attorney's fees in the present action if they were successful in recovering the funds that the defendant wrongfully deducted from their security deposit. The present action was transferred from the

---

[3] General Statutes § 42-150bb provides in relevant part: "Whenever any . . . lease entered into . . . to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the . . . lease. . . ."

housing session to the regular session of the Superior Court and tried to the court.

Following trial, the court issued a memorandum of decision on October 31, 2008, in which it found that the lease in question was the parties' second lease for the term from August 9, 2004, through August 8, 2005. The plaintiffs' monthly rent under the lease was $1349, and their security deposit was $2798. By way of letter dated April 9, 2005, the defendant notified the plaintiffs that the April, 2005 rent had not been paid. The letter stated: "Your rent is due by the close of business on the [first] of the month. In accordance with your lease agreement, we allow you a grace period. If your rent is not paid by 12 midnight on the [tenth], we will charge your account a *$75 late fee*. Any payments made after the [tenth] of the month must be paid by money order or cashier's check. . . . If we do not receive payment by 12 midnight on the [tenth], we will have no choice but to take legal action. Please note that if we begin legal proceedings, there are legal fees that will be charged back to you." (Emphasis in original.)

The court found that the plaintiffs testified that they received the letter after they had made a partial rent payment by way of personal check on April 8, 2005. The court took judicial notice that April 8, 2005, was a Friday. Dumelin testified that on April 11, 2005, payment in the amount of $497.99 was tendered to the defendant in the form of a bank check, which he had obtained on April 11, 2005, although the check is dated April 12, 2005. According to Dumelin, he obtained the check at a People's Bank branch located in a Stop & Shop supermarket, after normal banking hours, and the bank would issue the check only with the next day's date.

The court also found that on April 11, 2005, the defendant served the plaintiffs with a notice to quit for nonpayment of rent. On April 20, 2005, the defendant filed

a summary process action against the plaintiffs, which was withdrawn on June 21, 2005. After the plaintiffs vacated the premises, the defendant returned a portion of the plaintiffs' security deposit along with an accounting of the various moneys that had been deducted from the security deposit. The issue in this action concerns money deducted for legal fees allegedly associated with the summary process action.

In adjudicating the issue, the court construed the relevant portions of the lease. Paragraph 5 (a) of the lease provides that rent is due and payable on or before the first day of each month;[4] the lease also provides for a late charge to be payable in addition to the rent, if payment was made after the tenth day of the month.[5] The court found that the " 'grace period' " for the payment of rent comports with General Statutes § 47a-15a.[6] The lease also addressed the issue of default. Paragraph 17 provides in relevant part: "a. You will be in default under this Lease if: (1) You do not make your payment of Rent, including Other Charges, on time . . . (c) In the event of a default, in addition to the other remedies available to us under this Lease or applicable law, you agree to pay us all costs and fees, including attorney's fees, litigation and collection costs that we incur in enforcing our rights under this Lease, to the fullest

---

[4] Paragraph 5 (a) of the lease provides in relevant part: "You will pay an amount equal to the Total Rent and Other Charges, as specified in the Summary [portion of the lease stating the key terms of the lease], including Base Rent and all other recurring monthly charges due under this Lease, on or before the first day of each month during the term of this Lease . . . ."

[5] Paragraph 6 (b) of the lease provides in relevant part: "Late Charge: If your Rent is not paid on or before the Late Charge Date specified in the Summary [portion of the lease stating the key terms of the lease], a Late Charge in the amount specified in the Summary will be due immediately . . . ."

[6] General Statutes § 47a-15a provides in relevant part: "If rent is unpaid when due and the tenant fails to pay rent within nine days thereafter . . . the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive."

extent to which we are entitled to collect such sums from you under applicable law . . . ." Paragraph 5 (a) also provides that "[f]ailure to pay Rent will give rise to an action for eviction in addition to any other remedies we may have." The court found that the words of the lease were unambiguous.

The court also found that the plaintiffs had made only a partial payment of rent sometime before April 8, 2005. After the close of business on April 8, 2005, the plaintiffs sought to pay the balance of their rent using a " 'secure drop' " presumably maintained by the defendant. The defendant did not receive the payment until April 11, 2005. By then, the rent was late and not in the proper form of payment. The plaintiffs did not tender payment in the proper form until after the close of business on April 11, 2005. The bank check was dated April 12, 2005. The court found that the plaintiffs' failure to pay their rent before the tenth of the month constituted a breach of the lease. Due to the breach, the defendant had every right, under the lease, to serve the notice to quit and to file the summary process action. Paragraph 17 (c) of the lease provides that in the event of a default by the tenant, the tenant agrees to pay the landlord "all costs and fees, including attorney's fees, litigation and collection costs" that the defendant incurs in the enforcement of its rights.

The court also found that the plaintiffs had a history of making partial payments of their rent prior to the late charge date. The court concluded that the plaintiffs could not afford the apartment that they had rented and that they should not have been surprised that the defendant sought to terminate their tenancy on the basis of their failure to make a timely rent payment or that the defendant would seek legal fees for the resulting summary process action. The court concluded that the plaintiffs had failed to prove by a preponderance of the evidence that the defendant breached the lease by

bringing the summary process action and withholding attorney's fees from the security deposit. The court rendered judgment in favor of the defendant.

Thereafter, the plaintiffs filed a motion to reargue solely on the issue of whether the defendant was entitled to attorney's fees for the summary process action after it withdrew the action. To bolster their argument, the plaintiffs relied, in part, on the court's analysis in adjudicating the vexatious litigation count of their complaint. In that respect, the court found that the defendant's withdrawal of the summary process action was the result of an agreement reached by the parties. Also, because the defendant withdrew the action, the plaintiffs were not the prevailing parties. In their motion to reargue, the plaintiffs claimed that a party who withdraws an action on the basis of a negotiated settlement is not a prevailing party.[7] Moreover, the plaintiffs argued that there was no evidence that the settlement provided for attorney's fees, the defendant failed to file a motion for attorney's fees pursuant to Practice Book § 11-21 and the housing court awarded the defendant no attorney's fees. The plaintiffs asked the trial court to hear reargument solely on the issue of whether the defendant was entitled to attorney's fees in the summary process action, given the court's finding that it had been terminated by a settlement.

In its objection to the plaintiffs' motion to reargue, the defendant argued that the motion was predicated on the plaintiffs' assumption that the legal fees deducted from the security deposit were solely for eviction purposes without evidence to support that assumption.

[7] The plaintiffs quoted from *Blake* v. *Levy*, 191 Conn. 257, 264, 464 A.2d 52 (1983): "When a lawsuit ends in a negotiated settlement or compromise, it does not terminate in the plaintiff's favor and therefore will not support a subsequent suit for vexatious litigation. . . . This conclusion recognizes that the law favors settlements, which conserve scarce judicial resources and minimize the parties' transaction costs, and avoids burdening such settlements with the threat of future litigation." (Citations omitted.)

The defendant further argued that the legal fees deducted were related to the expenses it had incurred to enforce its rights under the lease.[8] The defendant noted that the plaintiffs had the burden of proving that the deduction was improper and claimed that the plaintiffs never addressed the nature of the legal fees deducted or conducted discovery to ascertain the nature of the legal fees. As to the plaintiffs' argument that the defendant failed to seek attorney's fees from the housing court, the defendant argued, citing General Statutes § 47a-23a, that the housing court is without jurisdiction to award money damages or attorney's fees, as it may only render a judgment of possession. The trial court summarily denied the plaintiffs' motion to reargue, and neither party sought an articulation of the court's decision. See Practice Book § 66-5.

The issue to be resolved is the plaintiffs' claim that the court improperly determined that they were not entitled to recover the legal fees the defendant had deducted from their security deposit. The plaintiffs claim is twofold: (1) whether the defendant was entitled to deduct any legal fees from the security deposit and (2) whether the defendant was entitled to all of the fees that it deducted. The first claim requires us to construe the plaintiffs' complaint and the lease, and the second to examine the evidence.

I

The plaintiffs' first claim is that the court improperly concluded that they had failed to prove that the defendant wrongfully deducted legal fees from their security deposit. We do not agree.

In paragraph 10 of their complaint, the plaintiffs alleged, in relevant part, that "[p]ursuant to the terms

---

[8] The defendant did not specify or identify the rights under the lease to which it was referring.

of the [l]ease, the [d]efendant is entitled to attorney's fees and court costs incurred in enforcing its rights under the [l[ease . . . ."[9] The allegation that the defendant was entitled to attorney's fees and court costs incurred in enforcing its rights under the lease constitutes a judicial admission. "[T]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . It is axiomatic that the parties are bound by their pleadings." (Citations omitted; internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 769, 890 A.2d 645 (2006). The plaintiffs therefore have admitted that the defendant was entitled to attorney's fees to enforce its rights under the lease. We therefore need only to decide whether the court properly determined that the defendant was enforcing its rights under the lease.

"[A] lease is a contract, and, therefore, it is subject to the same rules of construction as other contracts. . . . The standard of review for the interpretation of a contract is well established. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Citation omitted; internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007).

"Whether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings

---

[9] In its entirety, paragraph 10 alleges that "[p]ursuant to the terms of the [l]ease, the [d]efendant is entitled to attorney's fees and court costs incurred in enforcing its rights under the [l]ease pursuant to [General Statutes] § 42-150bb which provides that if a consumer lease provides for the commercial party to recover its attorney's fees, the consumer shall be awarded an attorney's fee as a matter of law if the consumer successfully prosecutes or defends an action based upon the consumer lease."

of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Czaplicki* v. *Ogren*, 87 Conn. App. 779, 785, 868 A.2d 61 (2005).

In construing the lease, the court found that it was clear and unambiguous. We agree. Paragraph 5 (a) provides in relevant part: "You will pay an amount equal to the Total Rent . . . due under this Lease, on or before the first day of each month . . . ." Paragraph 6 (b) provides in relevant part: "If your Rent is not paid on or before the Late Charge Date specified in the Summary [portion of the lease stating the key terms of the lease], a Late Charge in the amount specified in the Summary will be due immediately." The summary of the lease[10] provides that the late charge date is the eleventh of the month. Although the last sentence of paragraph 6 (b) of the lease provides that the defendant has the right to commence an eviction action to gain possession of the premises on the second day of the month if rent was not paid on the first, a letter from the defendant dated October 18, 2004, bearing the heading "rent policy reminder" informed the plaintiffs that if the defendant did not receive the monthly rent due before 9 a.m. on the eleventh of the month, the plaintiffs would receive a notice to quit.[11]

---

[10] The summary of the key lease terms provides in relevant part: "This Summary of Key Lease Terms . . . is an integral part of this Lease and is included within this Lease for all purposes."

[11] The October 18, 2004 letter brought the defendant's rent policy in line with § 47a-15a ("[i]f rent is unpaid when due and the tenant fails to pay rent within nine days thereafter").

Paragraph 17 of the lease concerns defaults and provides in relevant part: "a. You will be in default under this Lease if: (1) You do not make your payment of Rent . . . on time . . . . c. In the event of a default, in addition to the other remedies available to us under this Lease or applicable law, you agree to pay us all costs and fees, including attorney's fees, litigation and collection costs that we incur in enforcing our rights under this Lease . . . ."

In this case, the court found that the plaintiffs were in default or breach of the lease by failing to pay the rent due and owing the defendant on April 1, 2005, or before 9 a.m. on April 11, 2005. Under the terms of the lease, the defendant had the right to commence a summary process action upon default of the lease. The defendant, therefore, was entitled to serve the plaintiffs with a notice to quit and later to serve them with the summary process action. Moreover, paragraph 17 (c) provides that in the event of a default, such as nonpayment of rent, the defendant was entitled to recover the attorney's fees it incurred to enforce its rights under the lease.

In raising their claim on appeal, the plaintiffs have assumed that the defendant incurred attorney's fees as a result of the summary process action, but the plaintiffs have not directed us to any evidence that the attorney's fees the defendant deducted were incurred only as a result of the eviction action. On the basis of this assumption, the plaintiffs have argued that the defendant was not entitled to attorney's fees because it withdrew the eviction action and therefore was not the prevailing party. We need not address this argument, as the record does not indicate the basis of the legal fees the defendant deducted from the plaintiffs' security deposit. The record suggests that the defendant may have had reason to seek legal counsel with respect to the plaintiffs on more than one occasion. After all, the court found that

the plaintiffs were in the habit of paying their rent late. We conclude, therefore, that the court properly found that the plaintiffs had not proved that the defendant breached the lease by wrongly deducting legal fees from the plaintiffs' security deposit.

## II

The plaintiffs' second claim is that the court erred when it concluded that they failed to demonstrate that the defendant was not entitled to the legal fees that it deducted from the security deposit. We disagree.

The following facts are relevant to the plaintiffs' claim. When the defendant returned the plaintiffs' security deposit, the deposit was transmitted with a statement of deposit activity, which itemized the deductions to the plaintiffs' security deposit. One line of the itemization states: "8/28/2005 LEGAL—Legal Costs/Evictions Legal Fees $1,637.00." The substance of the plaintiffs' claim appears to be that there was no accounting or itemization of the $1637 legal fee.

The plaintiffs' claim concerns the burden of proof. This is not a case in which the defendant landlord filed a motion seeking attorney's fees but a plaintiff tenant's challenge to the legal fees deducted from the security deposit. The burden, therefore, was on the plaintiffs to demonstrate that the defendant was not entitled to deduct all or a portion of the legal fees. See *Byrne* v. *Grasso*, 118 Conn. App. 444, 451–52, 985 A.2d 1064 (2009) (burden on plaintiff to prove basis of challenge to attorney's fees), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010). Although the plaintiffs have cited General Statutes § 42-150aa (a),[12] which restricts the payment

---

[12] General Statutes § 42-150aa (a) provides in relevant part: "The holder of any . . . lease . . . the subject of which is . . . property . . . intended to be used primarily for personal . . . purposes and which contains a provision for payment of attorney's fees of a . . . lessor, shall not receive, claim or collect any payment for attorney's fees (1) for an attorney who is a salaried employee of such holder or (2) prior to the commencement of a lawsuit."

of attorney's fees provided for by a commercial lease under certain circumstances, they have not proven that the legal fees the defendant deducted from the security deposit violated the statute. The plaintiffs also correctly note that attorney's fees permitted under the provisions of a lease must be reasonable. See *Vespoli* v. *Pagliarulo*, 212 Conn. 1, 5–6, 560 A.2d 980 (1989); *Matyas* v. *Minck*, 37 Conn. App. 321, 336, 655 A.2d 1155 (1995). The plaintiffs, however, have not brought to our attention any evidence demonstrating that the defendant was not entitled to any or all of the legal fees deducted from the security deposit because the fees were unreasonable.

We conclude, therefore, that the lease entitled the defendant to pursue certain remedies for the plaintiffs' failure to pay rent, including eviction, and that the lease entitled the defendant to legal fees to enforce its rights under the lease. We also conclude that the plaintiffs failed to prove that the defendant's deducting the legal fees from their security deposit was wrongful under the lease or statute. The court, therefore, properly rendered judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.